STEPHENS, Judge.
 

 *44
 
 Respondent, the mother of E.M. ("Eddie"),
 
 [1]
 
 appeals from a permanency planning review order (1) changing the permanent plan for her son from a concurrent plan of reunification, or custody or guardianship with a relative, to a sole plan of custody or guardianship with a relative and (2) awarding legal custody of Eddie to a paternal cousin and his wife. Because we agree with some of Respondent's arguments and conclude that the order appealed from is flawed in
 
 *45
 
 certain respects, we vacate the permanency planning review order in part and remand for further proceedings.
 

 Factual and Procedural History
 

 On 7 April 2014, the Rowan County Department of Social Services ("DSS") took Eddie and his half-sister, A.M. ("Abby"), into nonsecure custody and filed a petition alleging that Eddie was a dependent and neglected juvenile and that Abby was an abused, dependent, and neglected juvenile.
 
 [2]
 
 The petition alleged that Eddie's father sexually molested Abby in the home he shared with Respondent and the two children and that Respondent knew of the sexual abuse, but failed to report it to law enforcement or DSS.
 

 At the adjudication hearing on 31 July 2014, the parties entered several stipulations, including that the district court could consider evidence of statements made by Abby regarding the sexual abuse and that the court could adjudicate Abby as an abused juvenile and Eddie as a neglected juvenile. Respondent's stipulations included the following: In mid-February 2014 when Respondent returned from the hospital after giving birth to Eddie, Abby told Respondent that Eddie's father had come into her bedroom at night, made her take off her clothes, have her put on a robe but leave it untied, and "ma[d]e her hump a doll." Abby reported that on another occasion Eddie's father pulled her pants down and "tried sticking [his penis] in [her]." Respondent did not believe Abby's statements and did not report her daughter's abuse at that time. Abby's abuse at the hands of Eddie's father was subsequently revealed in statements Abby gave to a social worker on 3 March 2014. Respondent also stipulated that although she had previously entered into a safety assessment with DSS that Eddie's father not be around her children, Eddie's father was in
 
 *867
 
 the home with Abby throughout the early months of 2014 and up until at least 1 April 2014.
 

 Respondent subsequently separated from Eddie's father and, on 29 April 2014, moved into a two-bedroom home which she shared with Eddie's paternal uncle ("Mike"). Respondent denied having a romantic relationship with Mike despite reports from several people that they were involved in such a relationship. On 26 July 2014, police were dispatched to the home to investigate a purported domestic dispute between Mike and Respondent, but no report was filed. However, Respondent's
 
 *46
 
 estranged husband reported to a DSS social worker that, during a visit his three children made to Respondent's home, Mike became upset with Respondent and punched his hand through a glass window, requiring stitches. Respondent told the social worker that she and Mike do not drink alcoholic beverages in the home, but when the social worker and a co-worker visited the home on 9 July 2014, Mike was intoxicated. Although Respondent attempted to intervene, Mike stated he was getting another drink and "as long as he is drunk at home his drinking isn't a problem." Mike did acknowledge that he was on probation for driving while impaired.
 

 On 27 August 2014, the court entered a written order adjudicating Abby as an abused and neglected juvenile and adjudicating Eddie as a neglected juvenile. The court awarded custody of Abby to her father and custody of Eddie to DSS, who placed him in the home of his paternal cousins. The order included the stipulations discussed
 
 supra
 
 , as well as findings of fact that Respondent,
 
 inter alia
 
 , (1) began working through Select Staffing on 29 April 2014 at a boutique earning $7.75 per hour, working nine to forty hours per week; and (2) completed the Women's Empowerment Program for victims of domestic violence at Genesis on 21 July 2014 and attended two individual mental health counseling sessions on 30 July 2014; but (3) "typically [appeared] disheveled" during visits with the social worker and Eddie. The order directed Respondent to maintain safe, sanitary, and stable housing; maintain employment to support herself and Eddie and to provide proof of income; complete parenting classes and show skills learned; submit to random drug screens; and re-engage in mental health treatment if her depression and/or anxiety worsened. The court postponed establishment of a permanent plan to the first permanency planning review ("PPR") hearing.
 

 On 13 November 2014, the court held a PPR hearing and, on 19 December 2014, filed an order establishing a permanent plan of reunification of Eddie with Respondent. The court's findings of fact indicated that, at the time of the hearing, Eddie was living with his paternal cousins, in whose care he was doing extremely well. At the time of the PPR hearing, Respondent had completed all of her treatment recommendations through Genesis, shown initiative by continuing to participate in mental health treatment, and attempted to enroll in various parenting classes. She continued to work through Select Staffing and started a new job on 26 August 2014 earning $9.00 per hour. However, Respondent could not afford to pay her bills based solely on her income. Her highest bi-weekly paycheck was $259.60, representing 40 hours of work plus a half hour of overtime. Pay records from Select Staffing indicated that
 
 *47
 
 Respondent earned approximately $600 per month in income, which the court noted was less than the total required for her to meet all of her household expenses. In addition, Respondent reported continuing to drive her car without insurance since 15 August 2014 because she was unable to pay the premium.
 

 Social workers visited Respondent's home on 14 August, 27 August, and 4 September 2014. Although the social workers advised Respondent and Mike that they could not recommend placement of Eddie with Respondent as long as Mike resided in the home, Mike continued to live there. Upon being informed of this recommendation, Mike became very aggressive and cursed the social workers. He also spoke very aggressively toward Respondent, "telling her to shut up and let him talk." Although Respondent "verbalized her realization that her living arrangements will continue to present a hostile environment" for herself and Eddie, she refused
 
 *868
 
 to live separately from Mike. The court found as fact that Respondent's continued willingness to accept disrespectful behavior from Mike also indicated her inability to effectively implement the relationship skills she had learned at Genesis. Respondent had not attempted to obtain more affordable housing for herself and Eddie, but had disposed of unrelated pending criminal charges, completed negative drug screens, and visited with Eddie weekly for a minimum of two hours each visit.
 

 On 12 February 2015, the district court held another PPR hearing and filed an order on 17 March 2015 changing the permanent plan for Eddie to a concurrent plan of reunification and custody or guardianship with a relative or court-approved caretaker. The court's findings of fact indicated that Eddie was continuing to do well in his foster home. Respondent still lived in the same residence and worked through Select Staffing, earning between $131.89 and $487.77 per paycheck. Although Mike reportedly moved out of the residence on 10 December 2014 to an undisclosed address, Respondent continued to care for his three dogs and their two cats. Mike also continued to have weekly visitations with his own child in Respondent's home. Respondent spent a lot of time with Mike and his family during the holidays, even though she had begun dating another man in September 2014. She brought Mike, who was intoxicated, to a visit with Eddie at his foster home on 12 January 2015. Respondent continued to submit negative drug screens, and she completed all of her treatment recommendations.
 

 On 27 August 2015, the court conducted another custody and PPR hearing, and, on 8 October 2015, filed the order under review ("the PPR order"). The findings in this order indicated that Eddie continued
 
 *48
 
 to do well in the home of his paternal cousins. Respondent obtained employment with Pactiv on 14 July 2015 and produced a pay stub stating she earned $998.53 for the period from 2 August to 15 August 2015. Respondent was dating a fellow employee at Pactiv. Although Respondent's new boyfriend told social workers that he did not smoke or drink, a check of criminal records disclosed that he was convicted in 2009 of driving while impaired and driving after consuming alcohol. Respondent also continued to maintain a relationship with Mike. Further findings of fact will be discussed later in this opinion as pertinent to the issues raised by Respondent in her appeal. The court granted legal custody of Eddie to his paternal cousins, granted weekly supervised visitation to Respondent at her expense, and ordered that no further review hearings were necessary. From the PPR order, Respondent filed a written notice of appeal on 30 October 2015.
 

 Discussion
 

 On appeal, Respondent argues that the district court erred in: (1) making numerous findings of fact in the PPR order not supported by clear, cogent, and competent evidence; (2) failing to make the findings of fact required by the provisions of various statutes; (3) requiring her to pay the costs of services for her supervised visits without making the necessary findings of fact; and (4) failing to apply the required standard of proof when finding that Respondent acted inconsistently with her constitutional rights as a parent. We affirm in part, and vacate and remand in part.
 

 Standard of Review
 

 "This Court reviews an order that ceases reunification efforts to determine whether the [district] court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the ... court's conclusions, and whether the ... court abused its discretion with respect to disposition."
 
 In re C.M.
 
 ,
 
 183 N.C.App. 207
 
 , 213,
 
 644 S.E.2d 588
 
 , 594 (2007) (citations omitted). "An abuse of discretion occurs when the [district] court's ruling is so arbitrary that it could not have been the result of a reasoned decision."
 
 In re N.G.
 
 ,
 
 186 N.C.App. 1
 
 , 10-11,
 
 650 S.E.2d 45
 
 , 51 (2007) (citation and internal quotation marks omitted),
 
 affirmed per curiam
 
 ,
 
 362 N.C. 229
 
 ,
 
 657 S.E.2d 355
 
 (2008).
 

 I. Evidentiary support for findings of fact
 

 Respondent first argues that many of the district court's findings of fact are not supported by clear, cogent, and competent evidence
 
 *49
 
 presented at the custody and PPR hearing. We dismiss Respondent's argument
 
 *869
 
 regarding a majority of the challenged factual findings as not preserved for our review, and we conclude that any error in the remaining findings of fact challenged by Respondent was not prejudicial to her.
 

 Respondent contends that a majority of the findings of fact are based upon court reports and documents that were never offered or received into evidence. However, the record indicates that Respondent failed to preserve this issue for appellate review by presenting to the district court "a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make...."
 
 See
 
 N.C.R. App. P. 10(a). The hearing transcript shows that the challenged reports and documents were referred to several times, but that Respondent made no objection or motion to strike or exclude the evidence. Further, even if Respondent had preserved this issue for appellate review, she could not show error because a court holding a PPR hearing is free to consider written reports or other documentary evidence without a formal proffer or admission of the documents into evidence as exhibits.
 
 [3]
 

 In re J.H.,
 
 --- N.C.App. ----, ----,
 
 780 S.E.2d 228
 
 , 239 (2015).
 

 Here, as Respondent acknowledges, the majority of the findings of fact she challenges are based upon court reports and other documentary exhibits. We hold the district court properly considered the reports and attachments and that they, supplemented by testimony of witnesses, support challenged findings of fact 2, 8-11, 12-17, 19-21, 24, 26-28, 34, 43-44, and 48.
 

 Respondent also challenges portions of finding of fact 49, in which the district court found that Respondent appeared to be active on several internet "adult dating sites." Respondent argues this matter was not relevant to her ability to parent her child. We agree, but note that the inclusion of an erroneous finding of fact is not reversible error where the court's other factual findings support its determination.
 
 In re T.M.
 
 ,
 
 180 N.C.App. 539
 
 , 547,
 
 638 S.E.2d 236
 
 , 240 (2006) (holding that "[w]hen ... ample other findings of fact support an adjudication of
 
 *50
 
 neglect, erroneous findings unnecessary to the determination do not constitute reversible error") (citation omitted). For the same reason, Respondent cannot show reversible error in finding of fact 52-that DSS had contended reunification was not in Eddie's best interest-which she characterizes as a "mere recitation of a contention or statement of DSS." Respondent does not explain how this recitation, which she does not contend is inaccurate, was in any way necessary to the court's determination given the other factual findings in support of the court's permanent plan, as discussed
 
 infra
 
 .
 

 II. Compliance with statutory provisions
 

 Respondent argues that the PPR order failed to comply with the requirements imposed by several of our State's General Statutes. We address each argument individually below.
 

 A. Compliance with section 7B-906.1
 
 (
 
 d
 
 )(
 
 3
 
 )
 

 Respondent contends that the district court erred in ceasing reunification efforts because its findings of fact failed to comply with the provisions of section 7B-906.2(b), which became effective 1 October 2015 and "applies to actions filed or pending on or after that date."
 
 See
 
 2015 N.C. Sess. Laws c. 135, §§ 14, 18. This subsection provides that reunification shall be the primary or secondary permanent plan unless the court makes findings under N.C. Gen. Stat. § 7B-901(c) -which the district court here did not do-or "makes written findings that reunification efforts clearly would be
 
 unsuccessful or would be inconsistent with the juvenile's health or safety
 
 ." N.C. Gen. Stat. § 7B-906.2(b) (2015).
 

 *870
 
 Prior to 1 October 2015, the provisions of section 7B-906.1(d)(3) applied to PPR orders and required a factual finding that "efforts to reunite the juvenile ... clearly would be
 
 futile or inconsistent with the juvenile's safety and need for a safe, permanent home within a reasonable period of time
 
 ." N.C. Gen. Stat. § 7B-906.1(d)(3) (2013).
 

 The PPR order here uses the language from section 7B-906.1(d)(3), but Respondent asserts that the amended statute applies because the PPR order was not filed until 8 October 2015. Alternatively, Respondent argues that even if section7B-906.1(d)(3) applies to the PPR order, the district court's findings of fact do not establish clear futility or an unsafe environment. We conclude that section 7B-906.1(d)(3) applies in this matter and further that the PPR order complies with the requirements of that statute.
 

 We first note that, although the written PPR order was signed and filed on 8 October 2015, after the effective date of section 7B-906.2, the
 
 *51
 
 PPR hearing was conducted and concluded on 27 August 2015, and that the court's ruling-that reunification efforts would be ceased and Eddie's permanent plan would be changed to custody with his paternal cousins-was announced in open court on that date. The question, then, is whether the "action" was still "pending" after the hearing concluded. "Pending" is defined as "[r]emaining undecided [or] awaiting decision[,]"
 
 see Pending
 
 , Black's Law Dictionary (9th ed. 2009), and the district court certainly could, upon reflection, have elected to alter some aspect of the ruling it announced in open court when reducing its ruling to writing in the PPR order. However, the PPR order did not vary in any way from the ruling announced in open court.
 

 Critically, both subsection 7B-906.1(d) and subsection 7B-906.2(b) provide guidance for the district court's action
 
 at a PPR
 
 "hearing[.]"
 
 See
 
 N.C. Gen. Stat. § 7B-906.1(d) ("At each hearing....");
 
 see also
 
 N.C. Gen. Stat. § 7B-906.2(b) ("At any permanency planning hearing...."). Here,
 
 at the time of the PPR hearing
 
 , the criteria the court was directed to consider were those enumerated in subsection 7B-906.1(d). Respondent's interpretation of the effective date of section 7B-906.2(b) would require us to hold that, in deciding a child's permanent plan, the district court should have considered criteria listed in a statute which was not in effect at the time of the proceeding at which the court heard evidence regarding the permanent plan. Such a holding would be nonsensical. In matters of statutory construction, we are guided by the directive to "effectuate legislative intent ... while avoiding absurd or illogical interpretations...."
 
 Fort v. Cty. of Cumberland
 
 ,
 
 218 N.C.App. 401
 
 , 407,
 
 721 S.E.2d 350
 
 , 355 (2012) (citations and internal quotation marks omitted),
 
 disc. review denied
 
 ,
 
 366 N.C. 401
 
 ,
 
 735 S.E.2d 180
 
 (2012).
 

 In turn, the "finding" of futility "is in the nature of a conclusion of law that must be supported by adequate findings of fact."
 
 In re J.H.
 
 , --- N.C.App. at ----,
 
 780 S.E.2d at 243
 
 (citation and internal quotation marks omitted). The district court's conclusion of law 4 states that continuation of a plan of reunification with Respondent "would be futile and is inconsistent with the juvenile's need for a safe, stable home within a reasonable period of time." This conclusion of law is supported by the court's findings of fact that: (1) Respondent stipulated that she was aware of the sexual abuse of another of her children by Eddie's father but failed to report it to law enforcement; (2) although Respondent had been participating in a parenting program since March 2015, the parent-educator who worked with her wrote a letter on 10 August 2015 expressing concern about Respondent's ability to protect her child against abuse; (3) the same parent-educator noted that when she and Respondent
 
 *52
 
 discussed the topic of child abuse prevention on 6 August 2015, just days before the PPR hearing, Respondent "slumped down in her chair and appeared agitated"; (4) Respondent told the parent-educator that if she suspected abuse of a child she would "just leave" and stated emphatically that she would not call law enforcement or DSS "because nothing would be done about it"; (5) Respondent knew that placement of Eddie in her home would not be recommended if there were still concerns about her living, parenting, and financial situation and, at the February 2015 review
 
 *871
 
 hearing, Respondent was ordered to explore affordable housing options separate from the man with whom she was living at the time, attend visitation with Eddie, maintain employment, submit to random drug screens, and demonstrate skills learned from parenting class, but at the time of the hearing in August 2015, Respondent had moved in with another man upon whom she is dependent for housing and from whom she receives financial support; and (6) Respondent was often observed using her cell phone to text or make calls and watching television instead of interacting with Eddie during visits. In addition, the court found as fact that (7) Eddie often looked to Respondent for comfort during visits but Respondent seldom gave her son comfort; (8) Eddie attempted to talk to Respondent but she did not listen to her son; and (9) Respondent did not follow the parent-educator's recommendations to bring toys and prepare activities for visits with Eddie, to greet Eddie at the beginning of visits, and to end visits with a hug or kiss. These findings of fact support the conclusion of law that continuation of a plan of reunification with Respondent "would be futile and is inconsistent with the juvenile's need for a safe, stable home within a reasonable period of time."
 

 B. Compliance with
 

 section 7B-906.1
 
 (
 
 j
 
 )
 

 Respondent next contends that the district court erred by granting custody to a non-parent without verifying that the person receiving custody understood the legal significance of the placement and will have adequate resources to care appropriately for the juvenile as required by N.C. Gen. Stat. § 7B-906.1(j). Specifically, while Respondent acknowledges that the court did find that the paternal cousins who received custody of Eddie "understand the legal significance of custody and have sufficient resources to care appropriately for the juvenile," this finding is not supported by evidence presented at the hearing. We agree in part and disagree in part.
 

 Although a district court is not required to make specific findings of fact, "the statute does require the ... court to make a determination that the guardian has adequate resources and some evidence of
 
 *53
 
 the guardian's resources is necessary as a practical matter, since the ... court cannot make any determination of adequacy without evidence...."
 
 In re J.H.
 
 , --- N.C.App. at ----,
 
 780 S.E.2d at 240
 
 (citation and internal quotation marks omitted). For example,
 
 In re
 
 , we found the utter lack of actual evidence regarding the guardian's resources insufficient to support the district court's determination:
 

 [The guardian's] unsworn affirmative answer to the ... court's inquiry as to whether she had the financial and emotional ability to support this child and provide for its need alone is not sufficient evidence, as this is [the guardian's] own opinion of her abilities. No doubt, had the ... court asked [the] respondent the same question, she also would have said yes, but her answer alone would not have been sufficient evidence of her actual resources or abilities to care for [the child] either. The ... court has the responsibility to make an independent determination, based upon facts in the particular case, that the resources available to the potential guardian are in fact adequate[ ]. In this case, there is no evidence at all of what [the guardian] considered to be adequate resources or what her resources were, other than the fact that she had been providing a residence for [the child]. And the evidence indicated that, even in providing a residence, [the guardian] had moved several times and had lived with friends or roommates. The ... court even seemed to recognize that [the guardian] may at some point lack resources to care for [the child] on her own, as indicated by the question: And do you have the willingness to reach out when your resources are running [out], so that you could make sure that they have whatever is in their best interest?
 

 In re P.A.
 
 , --- N.C.App. ----, ----,
 
 772 S.E.2d 240
 
 , 248 (2015) (citation and internal quotation marks omitted).
 

 Likewise, in
 
 In re J.H.
 
 , we found insufficient the district court's finding of fact
 

 that the grandparents [with whom the child had been in placement for 10 months] had met "[a]ll of his well-being needs[,]" and [a] DSS report stated that they had
 
 *872
 
 been "meeting [the child's] medical needs as well, making sure that he has his yearly well-checkups." The GAL's ... report
 
 *54
 
 stated that [the child] had "no current financial or material needs[.]"
 

 --- N.C.App. at ----,
 
 780 S.E.2d at 240
 
 . In both cases, evidence of the guardian's resources was conclusory, indirect, and inferential.
 

 In contrast, here, direct, specific evidence supports the court's finding that the paternal cousins have adequate resources to care appropriately for Eddie. Competent evidence supports the findings of fact that (1) the paternal cousins have their own home, a double-wide mobile home with a yard, where Eddie has been residing for the past sixteen months; (2) Eddie has his own bedroom and play area in the home and a playset and outside toys in the yard; and (3) all of Eddie's medical, dental, vision, and developmental needs are being met such that "Eddie lacks for nothing, as it seems as if he has every riding, educational and interactive toy imaginable." There was detailed evidence regarding Eddie's life with the paternal cousins, including the husband's employment with three employers, namely as a detention officer for the Rowan County Sheriff's Office, as a military policeman on inactive reserve in the National Guard, and as a forklift operator for another entity. His wife cares for Eddie during the week, and, when she works at a retail store on weekends, her mother or mother-in-law cares for Eddie. The paternal cousins have taken Eddie to Disney World in Florida and camping at Stone Mountain in Georgia, and had a future family trip planned to Myrtle Beach. The paternal cousins also gave Eddie a party on his first birthday. This evidence is sufficient to support the district court's determination that the paternal cousins have adequate resources to care for Eddie.
 

 However, no evidence in the record supports the court's finding that either of the custodians understand the legal significance of the placement. As we noted in
 
 J.H.,
 
 a "court cannot make a determination that a potential guardian understands the legal significance of the guardianship unless the ... court receives evidence to that effect."
 

 Id.
 

 at ----,
 
 780 S.E.2d at 240
 
 (citation omitted). Evidence sufficient to support a factual finding that a potential guardian understands the legal significance of guardianship can include,
 
 inter alia
 
 , testimony from the potential guardian of a desire to take guardianship of the child, the signing of a guardianship agreement acknowledging an understanding of the legal relationship, and testimony from a social worker that the potential guardian was willing to assume legal guardianship.
 
 See
 

 In re L.M.,
 

 238 N.C.App. 345
 
 , 348-49,
 
 767 S.E.2d 430
 
 , 433 (2014) (affirming a guardianship order as to one guardian in light of his testimony and that of a social worker). Further, this requirement of sufficient evidence applies to
 
 all
 
 potential guardians.
 

 Id.
 

 For example, in
 
 In re L.M.
 
 , we concluded that the evidence did not support a finding that the other
 
 *55
 
 potential guardian in that matter understood the legal significance of guardianship where she did not testify, sign a guardianship agreement, or otherwise demonstrate that she had accepted responsibility for the child.
 

 Id.
 

 Here, the husband in the custodial couple did not testify, and there is no evidence to indicate that he understood the legal significance of taking custody of Eddie. Further, although his wife testified at the hearing, she never testified regarding her understanding of the legal relationship, and the court never examined her to determine whether she understands the legal significance of the relationship. The report submitted by DSS contains no statement that either of the custodians understood the legal significance of guardianship. Accordingly, we must vacate the award of legal custody and remand for further proceedings consistent with this opinion.
 

 C. Compliance with
 

 section 7B-906.1
 
 (
 
 n
 
 )
 

 Respondent next contends that the district court erred by releasing the parties and waiving further review hearings without making the findings of fact mandated by N.C. Gen. Stat. § 7B-906.1(n). This statute provides that
 

 the court may waive the holding of hearings required by this section, may require
 
 *873
 
 written reports to the court by the agency or person holding custody in lieu of review hearings, or order that review hearings be held less often than every six months if the court finds by clear, cogent, and convincing evidence each of the following:
 

 (1) The juvenile has resided in the placement for a period of at least one year.
 

 (2) The placement is stable and continuation of the placement is in the juvenile's best interests.
 

 (3) Neither the juvenile's best interests nor the rights of any party require that review hearings be held every six months.
 

 (4) All parties are aware that the matter may be brought before the court for review at any time by the filing of a motion for review or on the court's own motion.
 

 (5) The court order has designated the relative or other suitable person as the juvenile's permanent custodian or guardian of the person.
 

 *56
 
 N.C. Gen. Stat. § 7B-906.1(n). Respondent argues the PPR order fails to state the standard of proof it applied in its order or to include findings on each of the factors required by this subsection. We agree.
 

 Although the best practice is for a court to affirmatively state the standard of proof that it applied in making factual determinations, the failure to do so is not prejudicial error if the "record when viewed in its entirety clearly reveals that the court applied the proper evidentiary standard" or where the appellant does not challenge those factual findings as lacking evidentiary support.
 
 In re M.D.
 
 ,
 
 200 N.C.App. 35
 
 , 39,
 
 682 S.E.2d 780
 
 , 783 (2009). Further, the failure to state the burden of proof in the written order is not reversible error if the court states the appropriate standard of proof in open court.
 

 Id.
 

 In addition, the failure to make "written findings of fact satisfying each of the enumerated criteria listed in N.C. Gen. Stat. § 7B-906.1(n) ... constitutes reversible error."
 
 In re P.A.
 
 , --- N.C.App. at ----,
 
 772 S.E.2d at 249
 
 .
 

 Here, the district court failed to state the standard of proof it applied in making the factual determinations required under this subsection in the PPR order or in open court, and we cannot say that the "record when viewed in its entirety clearly reveals that the court applied the proper evidentiary standard...."
 
 In re M.D.
 
 ,
 
 200 N.C.App. at 39
 
 ,
 
 682 S.E.2d at 783
 
 . Further, while the court found as fact that "[f]urther review hearings are not necessary, as the juvenile has resided with [his paternal cousins] for over one year, and no party is requesting review[,]" the PPR order does not include factual findings on the remaining enumerated criteria. For these reasons, the portion of the order waiving future review hearings must be vacated.
 
 See
 
 id.
 

 ;
 
 see also
 

 In re P.A.
 
 , --- N.C.App. at ----,
 
 772 S.E.2d at 249
 
 .
 

 D. Compliance with
 

 section 7B-906.1
 
 (
 
 e
 
 )(2)
 

 Respondent further contends that the court failed to comply with section 7B-906.1(e)(2) by not establishing rights and responsibilities that remain with Respondent, other than to establish visitation rights. She argues that since the General Assembly provided for visitation privileges in a separate statute- N.C. Gen. Stat. § 7B-905.1 -it must have intended for the district court to establish
 
 other
 
 rights and responsibilities in its order.
 

 We do not read the court's order so narrowly. The order provides that the paternal cousins shall "have the care, custody, and control of the juvenile" and "have the authority to consent to any necessary remedial, psychological, medical or surgical treatment for the juvenile." The order further specifies the actions required for Respondent to regain custody
 
 *57
 
 in the future. With regard to visitation, the order specifies that if she wants visitation in addition to weekly visitation supervised by the custodians, she must pay for it. We conclude the order adequately established the rights and responsibilities of the parties.
 

 III. Order to pay costs of supervised visits
 

 Respondent next argues the court erred by requiring her to pay the costs of services for her supervised visits without making any findings of fact regarding the cost and her ability to pay it. We agree. "Without [finding whether a parent is able to
 
 *874
 
 pay for supervised visitation once ordered], our appellate courts are unable to determine if the ... court abused its discretion by requiring as a condition of visitation that visits with the children be at [a] respondent['s] expense."
 
 In re J.C.,
 

 368 N.C. 89
 
 , 89,
 
 772 S.E.2d 465
 
 , 465 (2015) (per curiam) (citations omitted). Failure to make this finding requires this Court to vacate the portion of the order requiring that the visitation be at Respondent's expense and to remand for entry of a new order containing the required findings of fact.
 

 Id.
 

 Accordingly, the portion of the PPR order requiring Respondent to pay the cost of visitation is vacated and remanded for further proceedings consistent with this opinion.
 

 IV. Finding of fact regarding actions inconsistent with constitutional rights as parent
 

 Finally, Respondent argues the court erred in that its finding of fact that she acted inconsistently with her constitutional rights as a parent was not based on the required standard of proof, to wit, clear and convincing evidence. We agree.
 

 "[T]he government may take a child away from his or her natural parent
 
 only
 
 upon a showing that the parent is unfit to have custody ... or where the parent's conduct is inconsistent with her constitutionally-protected status."
 
 Adams v. Tessener
 
 ,
 
 354 N.C. 57
 
 , 62,
 
 550 S.E.2d 499
 
 , 503 (2001) (citations omitted; emphasis added). Because the decision to remove a child from a natural parent's custody "must not be lightly undertaken[,] ... [the] determination that a parent's conduct is inconsistent with ... her constitutionally protected status must be supported by clear and convincing evidence."
 
 Id.
 
 at 63,
 
 550 S.E.2d at 503
 
 (citation omitted). "While this analysis is often applied in civil custody cases under Chapter 50 of the North Carolina General Statutes, it also applies to custody awards arising out of juvenile petitions filed under Chapter 7B."
 
 In re D.M.
 
 ,
 
 211 N.C.App. 382
 
 , 385,
 
 712 S.E.2d 355
 
 , 357 (2011) (citation omitted). "Clear and convincing" evidence is an intermediate standard of proof, greater than the preponderance of the
 
 *58
 
 evidence standard applied in most civil cases, but not as stringent as the requirement of proof beyond a reasonable doubt required in most criminal cases.
 
 In re Montgomery,
 

 311 N.C. 101
 
 , 109-10,
 
 316 S.E.2d 246
 
 , 252 (1984). "Absent an indication that the [district] court applied the clear and convincing standard," we must vacate this portion of the PPR order and remand for entry of a new finding of fact that makes clear the standard of proof applied by the district court in determining whether Respondent's actions have been inconsistent with her constitutionally-protected status as Eddie's parent.
 
 See
 

 Bennett v. Hawks
 
 ,
 
 170 N.C.App. 426
 
 , 429,
 
 613 S.E.2d 40
 
 , 42 (2005).
 

 Conclusion
 

 In sum, we hold the court erred by (1) requiring Respondent to pay for supervised visits without making necessary findings, (2) waiving further review hearings without making all necessary findings of fact, (3) awarding legal custody to a non-parent without evidence to support its findings that the potential custodians understand the legal significance of the relationship, and (4) awarding custody to a non-parent without stating that it has applied the proper standard of proof. We vacate those portions of the order and remand for further proceedings consistent with this opinion. The PPR order is otherwise affirmed.
 

 AFFIRMED IN PART; VACATED AND REMANDED IN PART.
 

 Judges DAVIS and DIETZ concur.
 

 [1]
 

 We use pseudonyms to refer to the minors discussed in this opinion in order to protect their privacy and for ease of reading.
 
 See
 
 N.C.R. App. P. 3.1(b).
 

 [2]
 

 Eddie and Abby are Respondent's children by different fathers. Eddie's father has not appealed, and Abby is not a subject of this appeal. In addition, Respondent has three other children, also not subjects of this appeal. Their father, Respondent's estranged husband, was awarded custody of his children on 31 March 2014.
 

 [3]
 

 In the preamble to its findings of fact, the district court stated that it considered the sworn testimony of a named social worker, the foster mother, Respondent, and the social worker's written court report dated 15 July 2015 and supplemented on 27 August 2015, "copies of which are attached hereto, the factual statements in the reports are hereby adopted and incorporated, except as modified by reference herein...." The reports were omitted from the record on appeal, but have been attached as appendices to the joint brief filed by DSS and the Guardian
 
 ad Litem
 
 . On our own motion pursuant to N.C.R. App. P. 9(b)(5)(b), we add these reports to the record on appeal.