IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-793

Filed 15 August 2023

Wilkes County, No. 20 JA 127

IN THE MATTER OF: P.L.E.

Appeal by respondent-mother from order entered 7 June 2022 by Judge William F. Brooks in Wilkes County District Court. Heard in the Court of Appeals 31 July 2023.

> *Sherryl Roten West for petitioner-appellee Wilkes County Department of Social Services.*
>
> *Schell Bray PLLC, by Christina Freeman Pearsall, for guardian ad litem.*
>
> *Garron T. Michael, Esq., for respondent-appellant mother.*

TYSON, Judge.

Respondent-mother ("Respondent") appeals from a permanency planning order, which awarded guardianship of her minor child, P.L.E. ("Phoebe") to Phoebe's foster parents ("Mr. and Mrs. M.") and denied Respondent any visitation with Phoebe. *See* N.C. R. App. P. 42(b) (pseudonym used to protect the identity of minor). We vacate the order and award of guardianship and remand for further proceedings.

## I.    Background

Wilkes County Department of Social Services ("DSS") filed a petition on 23 September 2020 alleging Phoebe was a neglected juvenile. DSS stated it had received two reports regarding Phoebe's younger brother, "Blake," almost two years old, who

was taken and admitted into the hospital by Respondent with significant bruising on 19 August 2020. Blake had sustained several injuries, including a broken clavicle, torn frenulum, and extensive bruising to his throat and other protected areas. The injuries were non-accidental. A subsequent skeletal survey conducted on 14 September 2020 showed Blake had suffered other bone breaks on the ulna and radius of his right arm and a distal portion of his left arm.

Due to Blake's extensive and unexplained injuries, which purportedly occurred while Phoebe, age three, was living inside the family home, and the parents' inability to identify the perpetrator, DSS alleged Phoebe was neglected. DSS asserted she did not receive proper care, supervision, or discipline and lived in an environment injurious to her welfare, where she was also at risk for abuse. No physical injuries to Phoebe were ever documented by DSS. Phoebe and Blake were placed with kinship, their maternal great-aunt, as a safety placement.

The district court held the adjudication and disposition hearing on 26 October 2020, yet failed to enter orders until over six months later on 8 June 2021. The trial court's order adjudicated Phoebe as neglected, based upon facts stipulated to by the parties. The same day, the district court entered a disposition order, which kept Phoebe in DSS' custody and approved her placement with Mr. and Mrs. M. after the maternal great-aunt stated she was unwilling or unable to continue caring for her. Blake was also placed with Mr. and Mrs. M. at this time. Respondent was denied any

visitation with Phoebe "during the pendency of the investigation pertaining to the abuse allegations related to [Blake]."

The initial review hearing was held on 25 January 2021. Three and one-half months later, on 10 May 2021, the trial court entered an order, which found Respondent had signed a case plan on 12 November 2020. The court found her substantial progress on that plan, including she: (1) was in consistent contact with DSS; (2) was employed; (3) was residing in a stable home; (4) had started parenting classes; but, (5) had not scheduled her mental health or substance abuse assessments. Respondent had also been charged with misdemeanor child abuse based on the injuries allegedly sustained by Blake. While that charge remained pending, visitation with Blake was not permitted, unless visitation was "therapeutically recommended." As required by statute, DSS was ordered to continue reasonable efforts towards reunification. N.C. Gen. Stat. § 7B- 901(c) (2021).

The trial court next conducted a permanency planning hearing on 26 July 2021. In its 10 August 2021 order, the court found Phoebe was attending therapy to address her "diagnosis" of "Unspecified Trauma and Stressor Related Disorder due to her reported and observed behaviors." The trial court found Respondent's continued progress, including she: (1) was attending parenting classes inconsistently; (2) had weekly contact with a DSS social worker; (3) had completed her mental health assessment; (4) had completed a substance abuse assessment; (5) had tested positive

for cannabinoids; (6) had inappropriate housing; (7) was not currently employed; and, (8) was attending all scheduled court dates and meetings with DSS.

The court also found Respondent had allowed another woman and her one-year-old twins, who had an active DSS case, to reside with Respondent in her mobile home, which purportedly "smelled of marijuana." During a visit to Respondent's home, children who were present purportedly reported "the adults in the home smoked 'weed' via a bong or rolling it up in weird paper" and "snorted white stuff into their noses through a metal tube."

The court changed the plan and established a primary permanent plan of adoption with a secondary plan of guardianship. DSS was relieved from its obligation to assist the parents to make reasonable efforts towards reunification. Respondent's misdemeanor child abuse case remained pending, and she continued to be denied any visitation with Blake and Phoebe.

The next permanency planning hearing was held on 22 November 2021. The trial court again made findings regarding Respondent's progress, which had worsened. Respondent had completed four of sixteen parenting classes, was in arrears in child support, had not complied with the recommendation that she attend virtual group therapy, had not been employed since March 2021, and had a new criminal charge pending for misdemeanor larceny.

The court found Respondent had remained in contact with the social worker, had obtained housing, and was regularly attending court hearings and meetings with

DSS. The court also found Phoebe's therapy had been suspended "due to her progress in meeting all of her treatment goals." No changes were made to the primary and secondary permanent plans, and reunification efforts remained ceased. Respondent was restored with "limited telephone and video visits" with Phoebe, but DSS retained "the discretion to cease these visits if they appear detrimental to the wellbeing of the child."

The permanency planning hearing at issue in this appeal was held on 18 April 2022. The trial court entered an order seven weeks later on 7 June 2022, which found: Phoebe had resumed therapy based on "regressive behaviors" following the initial video visits with Respondent; Respondent was not in full compliance with her case plan; DSS recommended the primary permanent plan be changed from adoption to guardianship. Mr. M. was present in court and provided the court with a financial affidavit, which demonstrated Mr. and Mrs. M. had adequate resources to take care of Phoebe and understood the legal significance of being appointed as Phoebe's guardians. The court found by clear and convincing evidence Respondent and Phoebe's father had "acted inconsistently with their constitutional rights to parent the minor child."

The trial court changed the primary plan to guardianship with a secondary plan of adoption and awarded guardianship of Phoebe to Mr. and Mrs. M. Due to the therapist's report of Phoebe's negative reaction to her initial video visit with Respondent, no visitation was ordered. The court determined DSS had achieved the

permanent plan for Phoebe and ordered no further review hearings were necessary. Respondent appeals.

## II.   Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. §§ 7A-27 and 7B-1001(4) (2021).

## III.   Verification of Guardianship

### A. Standard of Review

Appellate "review of a permanency planning review order 'is limited to whether there is competent evidence in the record to support the findings [of fact] and whether the findings support the conclusions of law.'" *In re H.A.J.*, 377 N.C. 43, 49, 855 S.E.2d 464, 469 (2021) (quotation omitted). At a permanency planning hearing, any evidence may be considered, "including hearsay evidence as defined in [N.C. Gen. Stat. §] 8C-1, Rule 801, or testimony or evidence from any person that is not a party, that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition." N.C. Gen. Stat. § 7B-906.1(c) (2021).

"The trial court's findings of fact are conclusive on appeal if supported by any competent evidence." *In re H.A.J.*, 377 N.C. at 49, 855 S.E.2d at 469. Unchallenged findings of fact are "deemed to be supported by the evidence and are binding on appeal." *In re J.C.M.J.C.*, 268 N.C. App. 47, 51, 834 S.E.2d 670, 673-74 (2019) (citation omitted). This Court reviews conclusions of law *de novo. Id.*

### B. Analysis

Respondent challenges the trial court's award of joint guardianship to Mr. and Mrs. M. She contends insufficient evidence shows they understood the legal significance of being appointed as guardians for her children. Under the Juvenile Code, before placing a juvenile in a guardianship, the trial court is mandated to determine whether the proposed guardian "understands the legal significance of the appointment" and "will have adequate resources to care appropriately for the juvenile." N.C. Gen. Stat. §§ 7B-600(c), 7B-906.1(j) (2021).

To satisfy the requirement that the guardians understand the legal significance and responsibilities of the appointment, "the record must contain competent evidence demonstrating the guardian's awareness of [his and] her legal obligations[.]" *In re K.B.*, 249 N.C. App. 263, 266, 803 S.E.2d 628, 630 (2016) (citation omitted). This Court has explained that various types of evidence can satisfy this standard:

> Evidence sufficient to support a factual finding that a potential guardian understands the legal significance of guardianship can include, *inter alia*, testimony from the potential guardian of a desire to take guardianship of the child, the signing of a guardianship agreement acknowledging an understanding of the legal relationship, and testimony from a social worker that the potential guardian was willing to assume legal guardianship.

*In re E.M.*, 249 N.C. App. 44, 54, 790 S.E.2d 863, 872 (2016).

When two people are awarded joint guardianship, there must be sufficient evidence before the trial court that both persons understand the legal significance of

the appointment. *See In re L.M.*, 238 N.C. App. 345, 348-49, 767 S.E.2d 430, 433 (2014) (vacating an order for guardianship where "there was no evidence that the foster mother accepted responsibility" for the juvenile and affirming the order in part because the record tended to show the foster father's desire to take guardianship of the minor child).

In awarding guardianship jointly to Mr. and Mrs. M., the trial court found:

> 23. [Mr. M.] was present in court. He provided a financial affidavit to the Court. Per the affidavit, and evidenced by the fact that [Mr. and Mrs. M.] have provided for the minor child for more than six consecutive months, they have adequate resources to care appropriately for the minor child, and are able and willing to provide proper care and supervision of the minor child in a safe home. [Mr. and Mrs. M.] understand the legal significance of being appointed the minor child's legal custodians.

> 24. The minor child has been placed with [Mr. and Mrs. M.] since October 28, 2020, and it is in the minor child's best interest that she be placed in guardianship with [Mr. and Mrs. M.]. [Mr. and Mrs. M.] are committed to caring for the minor child and providing guardianship.

Respondent first contends the trial court's findings and conclusions are erroneous because they state Mr. and Mrs. M. "understand the legal significance of being appointed the minor child's legal *custodians*," rather than being appointed Phoebe's guardians. This error may be a misnomer and clerical in nature. *See In re R.S.M*, 257 N.C. App. 21, 23, 809 S.E.2d 134, 136 (2017) ("A clerical error is an error resulting from a minor mistake or inadvertence, especially in writing or copying something on the record, and not from judicial reasoning or determination."

(citations, alterations, and quotation marks omitted)). The remainder of the order uses the term "guardianship" repeatedly, including in the trial court's final decree that "guardianship of the minor child, [Phoebe], is hereby granted to [Mr. and Mrs. M.]" This error may be addressed and corrected upon remand.

Respondent next argues the trial court's finding of fact that Mr. and Mrs. M. understood the legal significance and accepted the responsibilities of guardianship was not supported by any competent evidence, noting that "at no point in any of the testimony [at the permanency planning hearing], or contained within either admitted court report is there any direct evidence regarding the foster parent's understanding of the guardianship appointment."

DSS and the guardian *ad litem* dispute Respondent's characterization of the evidence before the trial court. They point to a "Financial Affidavit of [Mr. and Mrs. M.] for Custody/Guardianship" purportedly filled out prior to the permanency planning hearing, which allegedly included the following section:

> **Part 5: RIGHTS AND RESPONSIBILITIES OF A CUSTODIAN/GUARDIAN**
>
> I understand the legal rights and responsibilities that will be bestowed upon me as the legal custodian/guardian for the above-named child(ren). I understand that this includes, but is not limited to, the responsibility to provide the child(ren) with food, shelter, care, and education until the child(ren) reach the age of majority. I understand that this includes, but is not limited to, the right to make all major decisions about the child's health, education, and religious upbringing.

The affidavit provided in the record to this Court is not signed by either Mr. or Mrs. M., and the portion of the affidavit containing a notary's affirmation is also blank. The unsigned "affidavit" itself is not competent or self-proving evidence of Mr. and Mrs. M.'s understanding of the legal significance and responsibilities of guardianship.

At the permanency planning hearing, Mr. M. offered the following testimony regarding the purported affidavit on direct examination from the GAL attorney advocate:

> Q. Sir, you filled out a financial affidavit earlier – earlier this week *indicating your finances*; is that correct?
>
> A. Yes, sir.
>
> Q. And everything on that affidavit is true to the best of your knowledge?
>
> A. Yes, sir.
>
> Q. And you and your significant other *have the financial means and ability* to care financially and emotionally for both [Phoebe] and [Blake]?
>
> A. That's correct.

The affidavit was purportedly entered into evidence during Mr. M.'s subsequent questioning by DSS:

> Q. Sir, you said you filled out *a financial affidavit*?
>
> A. Yes, ma'am.
>
> . . .

[DSS Attorney]: May I approach again, your Honor?

THE COURT: Sure.

Q. And this is *the financial affidavit* that you filled out?

A. Yes, ma'am.

Q. And you and [Mrs. M.], you have been caring for both children for quite a while now?

A. Yes, since October of 2020.

Q. And – since October of 2020?

A. Yes, ma'am.

Q. Okay.  So over a year-and-a-half?

A. Yes, ma'am.

Q. Okay.

[DSS Attorney]: Your Honor, and we'll admit [sic] this as Department's 2.

THE COURT: Okay.  All right.  Very well.  Allow this being introduced into evidence without objection as Petitioner's Exhibit No. 2.

Mr. M.'s testimony does not cure the issues with the unsigned financial affidavit before us nor satisfy the joint requirements and acceptance for Mrs. M.  *In re L.M.*, 238 N.C. App. at 348-89, 767 S.E.2d at 433.  Mr. M. only acknowledges "filling out" the financial affidavit, and the only information that was "filled out" had to do with the couple's finances.  Part 5 of the affidavit, which sets out the legal rights and responsibilities of a custodian/guardian, did not include any space to acknowledge it was read and understood, and there are no markings near it.

Mr. M.'s testimony did not discuss Part 5 nor otherwise address the legal obligations and responsibilities associated with guardianship. Mr. M.'s testimony did not provide any evidence that Mrs. M. was involved with filling out the affidavit or that he had discussed its contents with her, or that she understood and was in agreement with her joint responsibilities. *Id.*

Neither the unsigned financial affidavit nor Mr. M.'s testimony provides the evidence necessary to support the trial court's findings and conclusions that Mr. and Mrs. M. understood the legal significance and responsibilities of being appointed as Phoebe's guardians. No other witnesses offered testimony on the issue, and no other information is included in either the DSS or GAL court report to support the trial court's findings.

The trial court erred by finding and concluding the foster parents jointly understood the legal significance and responsibilities of guardianship. *See In re E.M.,* 249 N.C. App. 44, 55, 790 S.E.2d 863, 872 (2016) (vacating and remanding an award of legal custody when one member of the custodial couple did not testify and there was no evidence he understood the legal significance of taking custody, the testimony from the other member of the couple did not address her understanding of the legal relationship, and the DSS court report did not reflect that "either of the custodians understood the legal significance of guardianship"); *In re J.D.M.-J.,* 260 N.C. App. 56, 59-61, 817 S.E.2d 755, 758-59 (2018) (vacating and remanding an award of legal custody when neither of the prospective custodians testified, no testimony was offered

by DSS that the custodians were aware of the legal significance of assuming custody of the juveniles, and the custodians did not "sign a guardianship agreement acknowledging their understanding of the legal relationship"). We vacate the trial court's award of guardianship to Mr. and Mrs. M. and remand for further proceedings.

## IV. Visitation

### A. Standard of Review

"This Court reviews an order disallowing visitation for abuse of discretion." *In re J.L.*, 264 N.C. App. 408, 421, 826 S.E.2d 258, 268 (2019) (citation omitted). "An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision." *In re N.G.*, 186 N.C. App. 1, 10-11, 650 S.E.2d 45, 51 (2007) (citation and internal quotation marks omitted). A trial court has no discretion to fail to recognize, follow, or to correctly apply the law, or to commit an error of law. *See In re R.P.*, 276 N.C. App. 195, 198, 856 S.E.2d 868, 870 (2021) ("An abuse of discretion occurs when the trial court acts under a misapprehension of the law or its ruling is 'so arbitrary that it could not have been the result of a reasoned decision.'" (citation omitted)).

### B. Analysis

Respondent argues the trial court abused its discretion and erred when it denied her all visitation with Phoebe without adequately considering the totality of the circumstances of her parental rights and Phoebe's best interests.

N.C. Gen. Stat. § 7B-906.1(d) governs review and permanency planning

hearings, provides a list of criteria the trial court "shall consider," and states the trial court must "make written findings" regarding visitation. One of the items highlighted in the list is: "(2) Reports on visitation that has occurred and whether there is a need to create, modify, or enforce an appropriate visitation plan in accordance with [N.C. Gen. Stat. §] 7B-905.1." N.C. Gen. Stat. § 7B- 906.1(d)(2).

Under N.C. Gen. Stat. § 7B-905.1 (2021),

> [a]n order that removes custody of a juvenile from a parent, guardian, or custodian or that continues the juvenile's placement outside the home *shall provide for visitation* that is in the best interests of the juvenile consistent with the juvenile's health and safety, including no visitation. The court may specify in the order conditions under which visitation may be suspended.

N.C. Gen. Stat. § 7B-905.1(a) (emphasis supplied).

Another subsection of N.C. Gen. Stat. § 7B- 906.1 mandates the criteria the trial court "shall additionally consider" and "make written findings regarding" after "any permanency planning hearing where the juvenile is not placed with a parent." N.C. Gen. Stat. § 7B-906.1(e). The list includes the following criteria:

> (1) Whether it is possible for *the juvenile to be placed with a parent within the next six months and, if not, why* such placement is not in the juvenile's best interests.

> (2) Where the juvenile's placement with a parent is unlikely within six months, *whether legal guardianship or custody with a relative* or some other suitable person should be established *and, if so, the rights and responsibilities that should remain with the parents.*

> (3) Where the juvenile's placement with a parent is

unlikely within six months, whether adoption should be pursued and, if so, any barriers to the juvenile's adoption, including when and if termination of parental rights should be considered.

(4) Where the juvenile's placement with a parent is unlikely within six months, *whether the juvenile should remain in the current placement, or be placed in another permanent living arrangement and why.*

(5) Whether the county department of social services has since the initial permanency plan hearing made reasonable efforts to implement the permanent plan for the juvenile.

(6) Any other criteria the court deems necessary.

N.C. Gen. Stat. § 7B-906.1(e)(1)-(6) (emphasis supplied).

This Court has vacated and remanded permanency planning orders for failure to make written findings and conclusions of law pursuant to the criteria listed in N.C. Gen. Stat. § 7B-906.1. *See In re L.G.*, 274 N.C. App. 292, 851 S.E.2d 681 (2020). In *In re L.G.*, the trial court "ma[de] no mention of the possibility of [the child's] placement with either parent within the next six months" in the permanency planning order. *Id.* at 299, 851 S.E.2d at 687. Although the trial court "included *findings of fact* in the permanency planning order that *could support* a potential conclusion it was not possible for [the child] to be placed with [either parent] within six months, it *failed* to make that conclusion of law in the permanency planning order." *Id.* at 302, 851 S.E.2d at 689 (emphasis supplied). This Court remanded the matter to the trial court for "consideration of this issue and if the trial court so

concludes, to include specific language regarding the possibility of [the child] being placed with a parent within six months in the permanency planning order." *Id.*

The record only reflects Phoebe's DSS-paid therapist's opinion of her behavior following a video call visitation with Respondent after a long state-enforced absence of visitation with Respondent. The sole finding of fact reflecting visitation is:

> Therapist Bailey wrote a letter following the beginning of video call visitation between [Phoebe] and her mother, [Respondent]. When visits were started, [Phoebe] would become nervous and hesitant to be in the same room as the video call. She was upset by the calls and continued to show inappropriate behavior following each of the calls that were made. Due to this, the therapist's letter documented concerns of regressive behaviors following the visit that the therapist felt were harmful for [Phoebe] and that the video visitation should cease. Due to these behaviors, the therapist felt that it was necessary for [Phoebe] to resume regular sessions.

Here, the facts are similar to those in *In re L.G.*, because the trial court failed to include language consistent with the mandated statutory criteria in N.C. Gen. Stat. § 7B-906.1(d)-(e). *Id.* "[W]hile the trial court included findings of fact in the permanency planning order [which may] *support* a potential conclusion it was not possible for [Phoebe] to be placed with [Respondent] within six months, it *failed* to make that conclusion of law in the permanency planning *order*." *Id.* (emphasis supplied).

This matter is remanded to the trial court for further consideration and to make written and supported findings of fact as mandated and consistent with

Respondent's parental rights and the criteria outlined in N.C. Gen. Stat. § 7B-906.1(d)-(e), including "[r]eports on visitation that has occurred and whether there is a need to create, modify, or enforce an appropriate visitation plan in accordance with [N.C. Gen. Stat. §] 7B-905.1." N.C. Gen. Stat. § 7B-906.1(d)(2); *In re L.G.*, 274 N.C. App. at 302, 851 S.E.2d at 689.

## V. Conclusion

The trial court's conclusion that Mr. and Mrs. M. understood the legal significance of guardianship is not supported by findings based upon competent evidence in the record. The trial court's award of guardianship to Mr. and Mrs. M. is vacated and remanded for further proceedings.

The trial court's denial of Respondent's visitation with her children is vacated and remanded to the trial court for further consideration of the mandates of the statutes and this opinion. *See* N.C. Gen. Stat. §§ 7B-905.1 and 7B-906.1(d)-(e). *It is so ordered.*

VACATED AND REMANDED

Judge FLOOD and RIGGS concur.