IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-137

 No. COA20-148

 Filed 20 April 2021

 Cleveland County, No. 17 JA 132

 IN THE MATTER OF: L.G.A.

 Appeal by respondent-mother from order entered 25 November 2019 by Judge

 Micah J. Sanderson in District Court, Cleveland County. Heard in the Court of

 Appeals 23 February 2021.

 Charles E. Wilson, Jr., for petitioner-appellee Cleveland County Department of
 Social Services.

 Benjamin J. Kull, for respondent-appellant-mother.

 Michelle FormyDuval Lynch, for Guardian ad Litem.

 STROUD, Chief Judge.

¶1 Mother appeals from a review hearing order granting sole legal and physical

 custody of their minor child to Father. Mother argues the trial court erred by denying

 her motion for a continuance, by concluding it was in Lloyd’s1 best interest for Father

 to have full custody, and by ordering her to pay for professional visitation supervision

 without determining her present ability to pay. We affirm as to the denial of her

 motion to continue and the decision to grant full custody of Lloyd to Father but vacate

 1 Pseudonyms are used to protect the identity of the juvenile.
 IN RE L.G.A.

 2021-NCCOA-137

 Opinion of the Court

 and remand for additional findings on Mother’s present ability to pay for professional

 visitation supervision.

 I. Background

¶2 Mother and Father have one child together, Lloyd. One week after Lloyd’s

 birth, the parties were involved in an act of domestic violence while Father was

 holding Lloyd. Cleveland County Department of Social Services (“DSS”) took custody

 of Lloyd following this incident, and he was adjudicated neglected on 15 December

 2017. Father then regained custody of Lloyd, but after another incident of domestic

 violence Lloyd was placed in the custody of DSS.

¶3 On 2 May 2018 Mother and Father stipulated to findings of fact related to the

 second incident of domestic violence, and Lloyd was adjudicated as a neglected

 juvenile for a second time. Mother previously had several attorneys withdraw as

 counsel, and following a 1 May 2019 review hearing, the trial court indicated Mother’s

 visitation would revert to a previous schedule if she was rude to a social worker. The

 next day Mother demanded to meet with her social worker, complained about the

 visitation plan entered the day before, and made 14 separate calls to DSS. Mother

 threatened the social worker and was asked to leave DSS’s premises.

¶4 Mother was convicted of misdemeanor communicating threats against a

 previous social worker, and a condition of her bond was that she was prohibited from

 contacting her previous social worker. Mother violated the condition of her bond by
 IN RE L.G.A.

 2021-NCCOA-137

 Opinion of the Court

 texting her previous social worker; as a result, her bond increased, and she was

 prohibited from entering DSS’s premises.

¶5 Father filed a review motion on 9 August 2019 and requested custody of Lloyd.

 Mother filed a motion to continue the hearing, but her motion was denied. Father’s

 motion was heard on 25 September 2019. An order following the review hearing was

 entered on 25 November 2019 and granted full physical and legal custody to Father.

 Mother was incarcerated at that time and the order provided for supervised visitation

 for Mother upon her release from jail. Mother timely appealed from the order.

 II. Continuance

¶6 Mother argues, “[t]he court erred by denying [her] motion for a brief

 continuance because the importance of the constitutional and parental interests at

 stake far outweighed any competing interests.”

 A. Standard of Review

¶7 “Ordinarily, a motion to continue is addressed to the discretion of the trial

 court, and absent a gross abuse of that discretion, the trial court’s ruling is not subject

 to review.” In re A.L.S., 374 N.C. 515, 516-17, 843 S.E.2d 89, 91 (2020) (quoting State

 v. Walls, 342 N.C. 1, 24, 463 S.E.2d 738, 748 (1995)). “If, however, the motion is based

 on a right guaranteed by the Federal and State Constitutions, the motion presents a

 question of law and the order of the court is reviewable.” Id. at 517, 843 S.E.2d at 91

 (quoting State v. Baldwin, 276 N.C. 690, 698, 174 S.E.2d 526, 531 (1970)). “[D]enial
 IN RE L.G.A.

 2021-NCCOA-137

 Opinion of the Court

 of a motion to continue is only grounds for a new trial when defendant shows both

 that the denial was erroneous, and that [s]he suffered prejudice as a result of the

 error.” Id. (quoting State v. Walls, 342 N.C. at 24-25, 463 S.E.2d at 748).

¶8 Mother’s motion for a continuance alleged constitutional violations of her right

 to due process, and that she would “be obligated to assert her Fifth Amendment right

 to not incriminate herself in her criminal matter . . . if the hearing is scheduled prior

 to her arraignment date during the October 7, 2019 trial term.” Because Mother

 raised the constitutional basis for her argument before the trial court, we review this

 issue de novo. See id.

 B. Analysis

¶9 Mother argues, “[t]he court improperly forced [her] to choose between

 exercising her right not to incriminate herself and testifying regarding the fate of her

 son.” In her motion, Mother made general allegations about ongoing plea

 negotiations in her pending criminal charges and alleged she was scheduled to appear

 in superior court on the criminal matters in October 2019, when all of the criminal

 matters “will then be resolved in their entirety if she so chooses to tender a plead [sic]

 of guilty.” She also alleged she was a “material witness” in defense of Father’s motion

 for review, although she did not specify any particular issues her testimony may

 address. She did not allege any need for additional evidence, reports, or assessments

 that the court had requested or any other additional information regarding the child’s
 IN RE L.G.A.

 2021-NCCOA-137

 Opinion of the Court

 best interests. We note that Father’s motion for review did not make any allegations

 regarding Mother other than a reference to their history of a “toxic” relationship with

 “incidents of domestic violence,” referring to incidents that had already been

 addressed in prior hearings. The motion for review addressed Father’s own progress

 since the prior orders, specifically his completion of “the IMPACT program,” his

 successful unsupervised visitation for over two months, his residence in a “safe and

 stable home,” his “resources to solely provide for the minor child’s care,” his

 completion of all requirements in the trial court’s dispositional order, and the

 temporary placement of the child with him for care when the child was sick and the

 foster parents “were unable to find coverage for him.”

¶ 10 Continuances in this context are governed by North Carolina General Statute

 § 7B-803:

 The court may, for good cause, continue
 the hearing for as long as is reasonably
 required to receive additional evidence,
 reports, or assessments that the court has
 requested, or other information needed in the
 best interests of the juvenile and to allow for
 a reasonable time for the parties to conduct
 expeditious discovery. Otherwise,
 continuances shall be granted only in
 extraordinary circumstances when necessary
 for the proper administration of justice or in
 the best interests of the juvenile. Resolution
 of a pending criminal charge against a
 respondent arising out of the same
 transaction or occurrence as the juvenile
 IN RE L.G.A.

 2021-NCCOA-137

 Opinion of the Court

 petition shall not be the sole extraordinary
 circumstance for granting a continuance.
 N.C. Gen. Stat. § 7B-803 (2013). Additionally, N.C. Gen.
 Stat. § 7B-1109(d) provides: “Continuances that extend
 beyond 90 days after the initial petition shall be granted
 only in extraordinary circumstances when necessary for
 the proper administration of justice, and the court shall
 issue a written order stating the grounds for granting the
 continuance.” Id. § 7B-1109(d) (2013).

 In re C.J.H., 240 N.C. App. 489, 493, 772 S.E.2d 82, 86 (2015).

¶ 11 Under North Carolina General Statute § 7B-803, Mother had the burden of

 demonstrating good cause for a continuance, which may include the need for

 additional time “to receive additional evidence, reports, or assessments that the court

 has requested, or other information needed in the best interests of the juvenile and

 to allow for a reasonable time for the parties to conduct expeditious discovery.” N.C.

 Gen. Stat. § 7B-803 (2019). Since she did not allege a need for this type of

 information, Mother had the burden to demonstrate “extraordinary circumstances

 when necessary for the proper administration of justice or in the best interests of the

 juvenile.” Id.

¶ 12 Mother’s sole basis for requesting a continuance was that she was awaiting

 trial for charges of communicating threats to a previous social worker and assistant

 district attorney. She argues she was effectively prevented from testifying to avoid

 waiver of her Fifth Amendment rights against self-incrimination. Based upon her

 argument, any parent who has pending criminal charges might be able to delay
 IN RE L.G.A.

 2021-NCCOA-137

 Opinion of the Court

 hearings under Chapter 7B indefinitely, on the theory that the parent may need to

 present some testimony that could be used against her in a pending criminal charge,

 even if the charge is unrelated to the “same transaction or occurrence as the juvenile

 petition.” Id. But North Carolina General Statute § 7B-803 does not support this

 argument, as it provides that even “[r]esolution of a pending criminal charge against

 a respondent arising out of the same transaction or occurrence as the juvenile petition

 shall not be the sole extraordinary circumstance for granting a continuance.” Id.

 (emphasis added). Thus, even if the criminal charges against Mother had arisen from

 the “same transaction or occurrence as the juvenile petition,” she would still have to

 demonstrate other extraordinary circumstances to support a request for continuance.

 See id. The charges against Mother did not arise from the “transaction or occurrence”

 which led to the juvenile petition; they arose after the petition.

¶ 13 The trial court discussed Mother’s motion for a continuance and all parties

 indicated that they did not intend to question her if she chose to testify:

 We then discussed testimony, was presented to the Court
 that Mr. Caulder nor Mr. Wilson nor Ms. Dow had any
 intent of questioning [Mother] at all. Did not say they
 wouldn’t but said that they were not planning on asking
 her any questions at all. But, she one hundred percent will
 not be called as an adverse witness by any parties with the
 exception of [her own attorney].

 The trial court also offered to act in a gate keeper role to prevent someone saying

 something “that could potentially harm their criminal case.” But Mother chose not
 IN RE L.G.A.

 2021-NCCOA-137

 Opinion of the Court

 to testify at the “advice of her criminal counsel, her GAL and [her own counsel].”

¶ 14 The trial court denied Mother’s motion for a continuance in open court:

 [I]n this case mom had a motion to continue based on her
 “inability” to testify because she had pending criminal
 cases. This motion was denied and will still find mom had
 the ability to testify and is electing not to testify. It is not
 an inability. She does have a choice and she is choosing not
 to.

 The trial court provided adequate safeguards to protect Mother’s due process rights.

 The trial court properly determined that Mother was not statutorily entitled to a

 continuance, and Mother has failed to demonstrate any violation of her constitutional

 rights in the denial of her motion to continue. We affirm the trial court’s decision to

 deny Mother’s motion to continue.

 III. Custody

¶ 15 Mother argues, the trial “court erred by concluding it was in Lloyd’s best

 interest to grant full custody to [Father] because (1) the court failed to account for the

 long-standing concerns regarding [Father’s] ability to parent and (2) its ruling

 directly contradicted the GAL’s recommendation that [Father] only be allowed

 overnight visits.”

 A. Standard of Review

 Our “review of a permanency planning order is
 limited to whether there is competent evidence in the
 record to support the findings and whether the findings
 support the conclusions of law.” The trial court’s findings
 of fact “are conclusive on appeal when supported by any
 IN RE L.G.A.

 2021-NCCOA-137

 Opinion of the Court

 competent evidence, even if the evidence could sustain
 contrary findings.” . . . We review a trial court’s
 determination as to the best interest of the child for an
 abuse of discretion.

 In re J.H., 244 N.C. App. 255, 268-69, 780 S.E.2d 228, 238 (2015) (citations omitted).

 B. Finding of Fact 46

¶ 16 Mother challenges Finding of Fact 46 which states, “In regards to the

 Respondent Father, there have been no criminal allegations, charges, or convictions

 for any type of domestic violence or any civil domestic violence claims in 50B Court.”

 Mother argues “[t]his is simply not true.” Mother is correct that some of these things

 had happened in the past, and these matters were addressed in the trial court’s prior

 orders. But, in context, this finding addresses Father’s progress since the former

 disposition of the case:

 44. At the former disposition of this case, the Respondent
 Father was required to complete the domestic violence
 IMPACT Program, complete a psychological evaluation
 and parenting classes, enroll for counseling at Phoenix
 Counseling Center, and to maintain safe and stable
 housing.

 45. Since the former disposition of the case, there have been
 no domestic violence issues with Respondent Father and he
 has maintained stable and suitable housing with [his ex-
 wife].

 46. In regards to the Respondent Father, there have been
 no criminal allegations, charges, or convictions for any type
 of domestic violence or any civil domestic violence claims in
 50B Court.
 IN RE L.G.A.

 2021-NCCOA-137

 Opinion of the Court

 (Emphasis added.) This finding is supported by competent evidence, and Mother’s

 objection is overruled.

 C. Finding of Fact 51

¶ 17 Mother challenges the portion of Finding of Fact 51 which deals with the

 duration of the IMPACT program:

 51. The respondent father enrolled in and completed the
 IMPACT Program in July 2019. The Court has knowledge
 that the IMP ACT Program is a minimum of 26 weeks, and
 in this case the Respondent Father completed 30 weeks.

¶ 18 Father testified that he completed the IMPACT abuse intervention program.

 In the record, there is a letter from an IMPACT social worder which states Father

 was behind schedule to complete the program in 26 weeks. Accordingly, this finding

 is based on competent evidence.

 D. Finding of Fact 53

¶ 19 Mother argues the trial court “took improper judicial notice” in Finding of Fact

 53:

 53. The Court takes judicial notice of the widely-known
 benefits of the IMPACT program and how it has
 specifically improved the Respondent Father’s behavior
 and has helped him to maintain a calm demeanor during
 direct examination and cross examination.

¶ 20 The Guardian ad Litem argues that Mother

 did not object to this finding as the trial court announced it
 at the hearing, and therefore it is not proper for appellate
 review. See N.C. R. App. Proc. 10(a)(1). Respondent
 IN RE L.G.A.

 2021-NCCOA-137

 Opinion of the Court

 mother presented no evidence to dispute this finding by the
 trial court and has not shown there is any reasonable
 dispute as to the known benefits of the IMPACT program.
 Accordingly, this assignment of error should be dismissed.

 (Emphasis added.)

¶ 21 We first reject the Guardian ad Litem’s argument regarding waiver of review

 of this issue based on Mother’s failure to “object to this finding as the trial court

 announced it at the hearing.” Under the Rules of Appellate Procedure, parties are

 not required to object to a trial court’s findings of fact from the bench to preserve the

 issue for appellate review:

 Any such issue that was properly preserved for review by
 action of counsel taken during the course of proceedings in
 the trial tribunal by objection noted or which by rule or law
 was deemed preserved or taken without any such action,
 including, but not limited to, whether the judgment is
 supported by the verdict or by the findings of fact and
 conclusions of law, whether the court had jurisdiction over
 the subject matter, and whether a criminal charge is
 sufficient in law, may be made the basis of an issue
 presented on appeal.

 N.C. R. App. P. 10(a)(1) (emphases added). In addition, an order is not final until “it

 is reduced to writing, signed by the judge, and filed with the clerk of court . . . .” N.C.

 Gen Stat. § 1A-1, Rule 58. The trial court is not required to announce its rulings at

 the conclusion of a hearing and often will take the case under advisement before later

 issuing a written order or advising the parties and counsel of the ruling.

¶ 22 Here, at the conclusion of the hearing, the trial court directed Father’s counsel
 IN RE L.G.A.

 2021-NCCOA-137

 Opinion of the Court

 to prepare the written order and announced a general summary of the findings of fact

 and other provisions in the order, but Mother’s counsel did not object, and should not

 have objected, to the trial court’s rendition of its ruling, as there is no legal basis for

 an “objection” in this context. The trial court mentioned “judicial notice” during the

 rendition of the order, but judicial notice was not mentioned during the presentation

 of evidence, other than in reference to the prior orders entered in this case. And even

 when a trial judge announces a ruling and findings in open court, the written, signed,

 and filed order may not have exactly the same provisions as announced at the

 conclusion of the hearing. A party would have no way of “objecting” to a provision of

 the order until after the order is written, signed, and filed; that is the purpose of an

 appeal. Thus, we address Mother’s argument as to whether the trial court took

 improper judicial notice of “the benefits of the IMPACT program.”

¶ 23 Judicial notice is governed by Rule 201 of the North Carolina Rules of

 Evidence:

 (b) Kinds of facts. — A judicially noticed fact must be one
 not subject to reasonable dispute in that it is either (1)
 generally known within the territorial jurisdiction of the
 trial court or (2) capable of accurate and ready
 determination by resort to sources whose accuracy cannot
 reasonably be questioned.

 (c) When discretionary. — A court may take judicial notice,
 whether requested or not.

 (d) When mandatory. — A court shall take judicial notice if
 IN RE L.G.A.

 2021-NCCOA-137

 Opinion of the Court

 requested by a party and supplied with the necessary
 information.

 (e) Opportunity to be heard. — In a trial court, a party is
 entitled upon timely request to an opportunity to be heard
 as to the propriety of taking judicial notice and the tenor of
 the matter noticed. In the absence of prior notification, the
 request may be made after judicial notice has been taken.

 N.C. Gen. Stat. § 8C-1, Rule 201.

¶ 24 This Court has noted that an “indisputable fact” under Rule 201

 “ . . . ‘is so well established as to be a matter of common
 knowledge.’ Conversely, a court cannot take judicial notice
 of a disputed question of fact.” “By taking judicial notice of
 a fact so commonly known, the court avoids the needless
 formality of introducing evidence to prove an incontestable
 issue.”

 Hinkle v. Hartsell, 131 N.C. App. 833, 836, 509 S.E.2d 455, 458 (1998) (citations

 omitted).

¶ 25 Here, the record includes evidence regarding Father’s own participation in the

 IMPACT program, but there was no evidence regarding the overall success of the

 program and no indication that the program’s beneficial effects were “so well

 established as to be a matter of common knowledge.” Id. In this case, the trial court

 was not so much taking judicial notice of the details or historical record of the

 IMPACT program as noting a fact known to the trial judge, based upon his personal

 experience, but not an “indisputable” matter which is a “matter of common

 knowledge.” See id. While the trial court’s own personal knowledge and experience
 IN RE L.G.A.

 2021-NCCOA-137

 Opinion of the Court

 must and should inform any ruling, the specific findings of fact must be based upon

 the evidence presented in the case and not upon the judge’s own memory or

 knowledge. As this Court noted in Hensey v. Hennessy, “[A] judge’s own personal

 memory is not evidence.” 201 N.C. App. 56, 67, 685 S.E.2d 541, 549 (2009). “Appellate

 review of the sufficiency of the evidence to support the trial court’s findings of fact is

 impossible where the evidence is contained only in the trial judge’s memory.” Id. at

 68, 685 S.E.2d at 549.

¶ 26 “We have held that ‘[a] matter is the proper subject of judicial notice only if it

 is “known,” well established and authoritatively settled.’ Conversely, ‘[a]ny subject .

 . . that is open to reasonable debate is not appropriate for judicial notice.’” In re R.D.,

 376 N.C. 244, 852 S.E.2d 117, 132 (2020) (alterations in original) (citations omitted).

 Although the trial court no doubt had personal knowledge of the IMPACT program

 in general and had apparently seen good results from the program, the benefits of the

 IMPACT program are not “well established” or “authoritatively settled” in the

 manner appropriate for judicial notice under Rule 201. Accordingly, the portion of

 this finding regarding the “widely-known benefits of the IMPACT program” is not

 supported by the evidence. But the remainder of Finding of Fact 53—that the

 IMPACT program had “helped [Father] to maintain a calm demeanor during direct

 examination and cross examination” is supported by the record and was not based

 upon judicial notice. The record includes evidence about Father’s participation in the
 IN RE L.G.A.

 2021-NCCOA-137

 Opinion of the Court

 program, and the trial court observed Father’s demeanor at the hearing. The

 pertinent portion of the challenged finding was the effect of the IMPACT program on

 Father, not its general success rate or reputation, and this portion of Finding of Fact

 53 is supported by the record.

 E. Finding of Fact 58

¶ 27 Mother argues in Finding of Fact 58 the trial court “made an unreasonable,

 unsupported inference about the impact of [Father’s] mental disability on his ability

 to parent”:

 58. In spite of a documented mental disability of the
 Respondent Father, upon observing him on the witness
 stand, and although he did not recall every date, the Court
 has no concerns about his mental capacity or parenting
 capabilities. He was able to recall specific dates, locations
 and other information about exhibits when presented by
 his counsel and was able to read documents that were
 provided to him.

¶ 28 Here, Mother’s argument goes to the trial court’s assessment of the weight and

 credibility of the evidence and its evaluation of Father’s demeanor, and these are

 matters well within the discretion of the trial court to determine as the finder of fact:

 The function of trial judges in nonjury trials is to weigh and
 determine the credibility of a witness. The demeanor of a
 witness on the stand is always in evidence. All of the
 findings of fact regarding respondent’s in-court demeanor,
 attitude, and credibility, including her willingness to
 reunite herself with her child, are left to the trial judge’s
 discretion. Therefore, any of the findings of fact regarding
 the demeanor of any of the witnesses are properly left to
 IN RE L.G.A.

 2021-NCCOA-137

 Opinion of the Court

 the determination of the trial judge, since she had the
 opportunity to observe the witnesses.

 Balawejder v. Balawejder, 216 N.C. App. 301, 318-19, 721 S.E.2d 679, 689-90 (2011)

 (citations omitted) (quoting Matter of Oghenekevebe, 123 N.C. App. 434, 440-41, 473

 S.E.2d 393, 398-99 (1996)). This argument is overruled.

 F. Finding of Fact 60

¶ 29 Mother argues Finding of Fact 60 “inexplicably ignores the well-documented,

 long-standing concerns regarding [Father’s] ability to parent”:

 60. The Department of Social Services has not offered any
 concerns regarding the ability of the Respondent Father to
 parent capably and neither have any other third parties
 offered any concerns as to the same.

¶ 30 Again, as with the trial court’s references to domestic violence in Finding of

 Fact 46, Mother’s argument hearkens back to earlier incidents and hearings in the

 case, but in context, the trial court was referring to the evidence presented at this

 hearing and Father’s circumstances as of that date. Mother is correct that DSS did

 have concerns regarding Father in the past, but in addressing Father’s motion for

 review, based upon the evidence presented at this hearing, the trial court’s finding is

 supported by the record.

¶ 31 At the hearing on Father’s motion for review, a child permanency worker with

 DSS testified that she had no concerns regarding Father’s ability to parent and

 recommended physical and legal custody be returned to Father. The GAL also
 IN RE L.G.A.

 2021-NCCOA-137

 Opinion of the Court

 testified that they were not opposed to custody being returned to Father. This finding

 is supported by competent evidence.

 G. Conclusion of Law 5

¶ 32 Mother argues, “[t]he findings do not support the conclusion that it was in

 Lloyd’s best interest that [Father] be granted full custody”:

 5. It is in the best interest of the minor child that the
 Respondent Father be granted the sole legal and physical
 custody of the minor child with a provision for limited
 supervised visitation by the Respondent Mother, when she
 is no longer being held in custody.

¶ 33 We have already determined the trial court’s findings of fact were, with the

 small exception of the reference to “judicial notice” discussed above, are supported by

 the evidence. Thus, for purposes of appellate review, we must consider whether all

 of the findings of fact support the trial court’s conclusion of law.

¶ 34 The trial court’s findings demonstrate that after the previous review order,

 Father’s progress with his plan showed his ability to safely parent Lloyd. In contrast,

 Mother’s actions since the previous review order led to her arrest and incarceration

 instead of progress in becoming a suitable parent. This conclusion is supported by

 the trial court’s findings of fact, and the trial court did not abuse its discretion in

 making this determination.

 IV. Payment for Professional Supervision

¶ 35 Mother argues the trial court “erred by ordering [Mother] to pay for
 IN RE L.G.A.

 2021-NCCOA-137

 Opinion of the Court

 professional supervision for her visits because it made no findings regarding (1) her

 present ability to pay or (2) the cost of professional supervision.”

 A. Standard of Review

¶ 36 This Court reviews the trial court’s decree as to supervised visitation for abuse

 of discretion. In re E.M., 249 N.C. App. 44, 57, 790 S.E.2d 863, 874 (2016). In

 particular, the trial court must consider whether the parent would actually have the

 ability to exercise the visitation as ordered. See id. “Failure to make [a finding on

 whether a parent is able to pay for supervised visitation once ordered] requires this

 Court to vacate the portion of the order requiring that the visitation be at

 Respondent’s expense and to remand for entry of a new order containing the required

 findings of fact.” Id.

 B. Analysis

¶ 37 Mother argues, “[f]indings about ability to pay must address a parent’s

 present—not past—ability.” We agree.

¶ 38 Here the trial court found in relevant part:

 82. That upon the mother’s release from jail, the Court does
 make provisions as follows for the Respondent Mother to
 have visitation with the minor child as follows:

 a. The Respondent Mother may exercise
 supervised visitation when she is released
 from custody for one, two-hour period every
 two weeks.

 b. If the parties cannot agree on a visitation
 IN RE L.G.A.

 2021-NCCOA-137

 Opinion of the Court

date, then the supervised visitation will be
every other Thursday from 2:00 PM to 4:00
PM.

c. The visitation will be supervised by a third-
party upon agreement of the parents;
however, if the parents cannot agree on a
third-party supervisor, the Respondent
Mother will be responsible to retain a
professional supervisor for such a purpose.
Should Respondent Mother retain a
professional supervisor, Respondent Father
cannot refuse such visitation based on his
disagreement with the Respondent Mother’s
choice in professional supervisor.

d. Respondent Mother does have the financial
ability to retain a professional supervisor for
visitation. In previous hearings, Respondent
Mother has informed this court that prior to
being incarcerated she worked two jobs at the
same time. Respondent Mother has also had
the financial ability to retain private counsel.
The Respondent mother has previously
financially been able to post a $10,000 secured
bond. Respondent Mother has also previously
stated through counsel, other than Attorney
Hughes, that she has the ability to post the
current bond but is choosing not to. All of
these previous statements do satisfy this
court that she does have the financial ability
to comply with and retain a professional
supervisor for future supervised visitation.

e. Respondent Father and Respondent
Mother are not to have any contact with one
another. Respondent Mother must have an
agreed upon third-party supervisor or a
professional supervisor to make such
visitation arrangements with the Respondent
 IN RE L.G.A.

 2021-NCCOA-137

 Opinion of the Court

 Father.

¶ 39 Even though Mother previously had two jobs and the ability to post a secured

 bond, these findings do not address her ability to pay for supervised visitation

 following her incarceration, when the supervised visitation would begin. First, since

 Mother’s criminal charges were still pending, there was no evidence as to when she

 would be released from incarceration or what her circumstances would be at that

 time. There was no evidence Mother’s prior employment would still be available to

 her after her release. All the evidence would suggest that her financial situation will

 likely be different when she is able to resume visitation. We vacate the portion of the

 order requiring Mother to pay for supervised visitation and remand for additional

 findings of fact on Mother’s ability to pay supervision fees at the relevant time, after

 she is released from incarceration and able to exercise visitation. In addition, the

 trial court shall make findings on the costs associated with a professional supervisor

 and who may qualify as a professional supervisor.

 V. Conclusion

¶ 40 For the foregoing reasons, we affirm the trial court’s denial of Mother’s motion

 to continue and the order granting full custody of Lloyd to Father, but we vacate the

 provisions regarding Mother’s financial responsibility for professional supervision

 and remand for additional findings regarding the qualifications of a “professional”

 supervisor, the cost of supervision, and Mother’s ability to pay for professional
 IN RE L.G.A.

 2021-NCCOA-137

 Opinion of the Court

supervision. The trial court shall receive additional evidence as needed to address

this issue on remand.

 AFFIRMED IN PART; VACATED IN PART AND REMANDED.

 Judges MURPHY and GRIFFIN concur.