DAVIS, Judge.
 

 A.M. ("Respondent") appeals from an order that awarded custody of her minor children J.D.M.-J. ("Jacob")
 
 [1]
 
 and O.M.L.J. ("Opal") to their aunt and uncle in Arizona, terminated the juvenile proceeding, and transferred the matter for entry of a civil custody order under Chapter 50 of the North Carolina General Statutes. On appeal, she argues that the trial court failed to (1) comply with the statutory procedure for terminating the proceeding in juvenile court; (2) ensure compliance with the Interstate Compact on the Placement of Children (the "ICPC"); (3) verify that the custodians possessed adequate resources and understood the legal significance of the placement of the children in their custody; and (4) comply with statutory requirements in establishing Respondent's visitation rights. After a thorough review of the record and applicable law, we vacate the trial court's order and remand for further proceedings.
 

 Factual and Procedural Background
 

 Respondent is the mother of Opal and Jacob.
 
 [2]
 
 Opal was born in December 2006 and Jacob in September 2008. In December 2014, the Cabarrus County Department of Human Services ("DHS") received a report that Respondent had not been properly monitoring Jacob's blood sugar levels in connection with his juvenile diabetes and that the house was not clean or safe for the children.
 

 In December 2015 and January 2016, DHS received numerous reports alleging that (1) there was fighting in the home between Respondent and her oldest child ("April")
 
 [3]
 
 ; (2) Respondent was not properly caring for Jacob's diabetes; (3) Opal was not receiving her ADHD medication as prescribed; (4) Jacob was missing school; and (5) Opal and Jacob were attending school with inadequate clothes and inattention to personal hygiene.
 

 DHS began providing in-home services to the family in response to these reports. In April and May 2016, DHS received new reports stating that Respondent was providing inadequate care for both children's medical needs, Opal had been disruptive at school, and Opal was being physically abused by April at home.
 

 On 20 June 2016, Respondent was hospitalized, and Opal and Jacob were staying with a family friend. The friend reported that she was not comfortable caring for the children while Respondent was in the hospital. On 22 June 2016, DHS filed juvenile petitions alleging that Opal and Jacob were neglected juveniles. The children were placed in nonsecure custody with DHS the same day. On 11 August 2016, Respondent consented to an order that adjudicated the children to be neglected, established a primary permanent plan of reunification with a secondary permanent plan of guardianship, and required her to comply with a case plan.
 

 A permanency planning hearing was held on 10 August 2017 before the Honorable Christy E. Wilhelm in Cabarrus County District Court. Respondent testified at the hearing along with Lisa Fullerton and Rachel Willert, two social workers employed by DHS.
 

 On 25 August 2017, the trial court entered a permanency planning order awarding custody of Opal and Jacob to Beverly and Johnnie Worley (the children's maternal aunt and uncle), who lived in Phoenix, Arizona. The court terminated jurisdiction in the juvenile action and ordered that the matter be transferred to a Chapter 50 civil custody action. Respondent filed a timely notice of appeal.
 

 Analysis
 

 On appeal, Respondent argues that the trial court erred by failing to (1) make necessary findings required under N.C. Gen. Stat. § 7B-911 before terminating jurisdiction in the juvenile action; (2) ensure compliance with the ICPC; (3) verify that the Worleys had adequate resources to serve as custodians and that they understood the legal significance of the placement of the children in their custody; and (4) make statutorily required findings regarding Respondent's visitation rights. We address each argument in turn.
 

 I. Findings Required by N.C. Gen. Stat. § 7B-911
 

 Respondent initially contends-and both DHS and the guardian
 
 ad litem
 
 ("GAL") concede-that the trial court failed to make required findings in connection with the portion of its order terminating the juvenile proceeding and initiating a civil action under Chapter 50. N.C. Gen. Stat. § 7B-911(c) provides, in relevant part, as follows:
 

 (a) Upon placing custody with a parent or other appropriate person, the court shall determine whether or not jurisdiction in the juvenile proceeding should be terminated and custody of the juvenile awarded to a parent or other appropriate person pursuant to G.S. 50-13.1, 50-13.2, 50-13.5, and 50-13.7.
 

 (b) When the court enters a custody order under this section, the court shall either cause the order to be filed in an existing civil action relating to the custody of the juvenile or, if there is no other civil action, instruct the clerk to treat the order as the initiation of a civil action for custody.
 

 ....
 

 If the court's order initiates a civil action, the court shall designate the parties to the action and determine the most appropriate caption for the case. ... The order shall constitute a custody determination, and any motion to enforce or modify the custody order shall be filed in the newly created civil action in accordance with the provisions of Chapter 50 of the General Statutes. ...
 

 (c)
 
 When entering an order under this section, the court shall ....
 

 ....
 

 (2)
 
 Make the following findings:
 

 a. There is not a need for continued State intervention on behalf of the juvenile through a juvenile court proceeding.
 

 b. At least six months have passed since the court made a determination that the juvenile's placement with the person to whom the court is awarding custody is the permanent plan for the juvenile, though this finding is not required if the court is awarding custody to a parent or to a person with whom the child was living when the juvenile petition was filed.
 

 N.C. Gen. Stat. § 7B-911 (2017) (emphasis added).
 

 Here, it is undisputed that the trial court made no findings satisfying either subsection (2)(a) or (2)(b). Nor do the findings it did make allow this Court to infer that these statutory provisions were met.
 
 See
 

 In re A.S.,
 

 182 N.C. App. 139
 
 , 144,
 
 641 S.E.2d 400
 
 , 403-04 (2007) (upholding order that failed to contain explicit findings under N.C. Gen. Stat. § 7B-911(c)(2) but made findings demonstrating that trial court no longer considered DSS intervention necessary).
 

 Indeed, the trial court's order is internally inconsistent. On the one hand, it requires continued involvement with the juveniles by DHS by stating the following:
 

 6. CCDHS should continue to make reasonable efforts to prevent or eliminate the need for placement of the juveniles.
 

 ....
 

 9. The juveniles's [sic] placement and care are the responsibility of CCDHS and the agency shall arrange for the foster care or other placement of the juvenile. CCDHS is granted the authority or [sic] to obtain medical treatment, educational, psychological, or psychiatric treatment and services as deemed appropriate by CCDHS.
 

 On the other hand, however, the order states as follows:
 

 3. The court grants custody of the juveniles to Beverly and Johnnie Worley.
 

 ....
 

 8. This matter is closed. CCDHS and the GAL are released from this matter.
 

 9. This case is transferred to a Chapter 50 Action.
 

 These conflicting provisions cannot be reconciled. On remand, we instruct the trial court to determine whether or not DHS should continue to have a role over the placement and care of the children or, alternatively, whether it should be released from further obligations. In the event the trial court determines that no further involvement by DHS is necessary, we direct the court to make the findings required by N.C. Gen. Stat. § 7B-911(c)(2).
 

 II. Noncompliance With ICPC
 

 Respondent next contends that the trial court erred in awarding custody to the Worleys in Arizona without ensuring that the provisions of the ICPC had been satisfied. We agree.
 

 In entering a dispositional order that places juveniles in out-of-home care,
 

 the court shall first consider whether a relative of the juvenile is willing and able to provide proper care and supervision of the juvenile in a safe home. ... Placement of a juvenile with a relative outside of this State must be in accordance with the Interstate Compact on the Placement of Children.
 

 N.C. Gen. Stat. § 7B-903(a1) (2017).
 

 The ICPC provides, in pertinent part, as follows:
 

 No sending agency shall send, bring, or cause to be sent or brought into any other party state any child for
 
 placement in foster care or as a preliminary to a possible adoption
 
 unless the sending agency shall comply with each and every requirement set forth in this Article and with the applicable laws of the receiving state governing the placement of children therein.
 

 N.C. Gen. Stat. § 7B-3800, Article III(a) (2017) (emphasis added). The ICPC further requires that before a child is sent to the receiving state, "the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child." N.C. Gen. Stat. § 7B-3800, Article III(d).
 

 DHS and the GAL argue that the children's placement with the Worleys was neither a "placement in foster care" nor "as a preliminary to a possible adoption," meaning that the ICPC does not apply. We have previously rejected a similar argument.
 
 In re V.A.
 
 ,
 
 221 N.C. App. 637
 
 ,
 
 727 S.E.2d 901
 
 (2012), involved a child who was placed in the custody of an out-of-state relative without notification from the receiving state that the placement did not appear to be contrary to the interests of the child.
 
 Id.
 
 at 639-40,
 
 727 S.E.2d at 903
 
 . We determined that the trial court was required to comply with the ICPC, stating as follows:
 

 The ICPC requires that before a juvenile can be placed with an out-of-state relative "the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child." N.C. Gen. Stat. § 7B-3800, Article III(d). This Court has previously interpreted the statutory preference for relative placements in harmony with the ICPC, and held that "a child cannot be placed with an out-of-state relative until favorable completion of an ICPC home study."
 
 In re L.L.
 
 ,
 
 172 N.C. App. 689
 
 , 702,
 
 616 S.E.2d 392
 
 , 400 (2005) (holding that the statutory preference for relative placement and compliance with the ICPC are not mutually exclusive).
 

 Id.
 
 at 640,
 
 727 S.E.2d at 904
 
 .
 

 We further rejected the argument that the child's placement with relatives did not constitute "foster care."
 

 According to Regulation 3(4)(26), "foster care" is "24-hour substitute care for children placed away from their parents or guardians and for whom the state agency has placement and care responsibility ... [which] includes ... foster homes of relatives" "regardless of whether the foster care facility is licensed and payments are made by the state or local agency for the care of the child." Ass'n of Adm'rs of the ICPC (AAICPC), Reg. No. 3 (amended May 1, 2011). The ICPC defines "placement" as "the care of a child in a family free or boarding home ...." N.C. Gen. Stat. § 7B-3800, Article II(d). A "family free" home, counter intuitively, is "the home of
 
 a relative or unrelated individual
 
 whether or not the placement recipient receives compensation for care or maintenance of the child." AAICPC, Reg. No. 3(4)(24) (emphasis added).
 

 Id.
 

 at 641 n.1,
 
 727 S.E.2d at
 
 904 n.1. Thus, we concluded that the custody placement with the out-of-state relatives was a "placement in foster care," thereby triggering the requirements of the ICPC.
 
 Id.
 
 at 641,
 
 727 S.E.2d at 904
 
 .
 

 In arguing that the ICPC does not apply on these facts, DHS and the GAL direct our attention to
 
 In re J.E.
 
 ,
 
 182 N.C. App. 612
 
 ,
 
 643 S.E.2d 70
 
 ,
 
 disc. review denied
 
 ,
 
 361 N.C. 427
 
 ,
 
 648 S.E.2d 504
 
 (2007). In that case, the respondent-mother argued that the trial court had erred because DSS had not conducted a home study pursuant to the ICPC before placing her children with their maternal grandparents, who lived in Virginia. We held that placement of the minor children with their grandparents did not constitute "foster care" and was not "preliminary to adoption" for purposes of the ICPC.
 

 Id.
 

 at 615
 
 ,
 
 643 S.E.2d at 72
 
 (citation and quotation marks omitted). Thus, we held that compliance with the ICPC was not required.
 

 Id.
 

 We acknowledge that the holdings of
 
 J.E.
 
 and
 
 V.A.
 
 are in conflict on this issue. It is axiomatic that we are bound by the prior decisions of this Court.
 
 See
 

 In re Civil Penalty
 
 ,
 
 324 N.C. 373
 
 , 384,
 
 379 S.E.2d 30
 
 , 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."). However, "it is also well settled that where there is a conflicting line of cases, a panel of this Court should follow the older of those two lines."
 
 Graham v. Deutsche Bank Nat'l Tr. Co.
 
 ,
 
 239 N.C. App. 301
 
 , 306,
 
 768 S.E.2d 614
 
 , 618 (2015) (citation and quotation marks omitted).
 

 Although
 
 J.E.
 
 predates
 
 V.A.
 
 , this Court in
 
 V.A.
 
 expressly relied on our earlier decision in
 
 In re L.L.
 
 ,
 
 172 N.C. App. 689
 
 ,
 
 616 S.E.2d 392
 
 (2005), that "a child cannot be placed with an out-of-state relative until favorable completion of an ICPC home study."
 
 Id.
 
 at 702,
 
 616 S.E.2d at 400
 
 . Because
 
 L.L.
 
 was decided before
 
 J.E.
 
 , we conclude that we are bound by the
 
 L.L.
 
 /
 
 V.A.
 
 line of cases.
 

 Based on that line of cases, the ICPC required that Arizona notify DHS the proposed placement of Jacob and Opal did not appear to be contrary to the interests of the children. Because DHS had not received such notification from the appropriate Arizona agency prior to entry of the permanency planning order, the trial court was not authorized to award custody of Opal and Jacob to the Worleys. Accordingly, before any decision is made on remand to once again award custody of the juveniles to the Worleys, the trial court must first confirm that DHS received the required notification from the Arizona agency as mandated by the ICPC.
 

 III. Verifications Concerning Proposed Custodians
 

 Respondent next contends that the trial court erred in awarding custody of the juveniles to the Worleys without first verifying both that (1) the couple had adequate resources to care for the children; and (2) understood the legal significance of the placement. We agree.
 

 N.C. Gen. Stat. § 7B-906.1(j) states as follows:
 

 If the court determines that the juvenile shall be placed in the custody of an individual other than a parent or appoints an individual guardian of the person pursuant to G.S. 7B-600, the court shall verify that the person receiving custody or being appointed as guardian of the juvenile understands the legal significance of the placement or appointment and will have adequate resources to care appropriately for the juvenile.
 

 N.C. Gen. Stat. § 7B-906.1(j) (2017).
 

 In its order, the trial court made the following findings of fact regarding the Worleys:
 

 8. CCDHS initiated an Interstate Compact on Placement of Children, hereinafter referred to as ICPC. All of the paperwork and information needed to comply with the ICPC submission to the state office in Raleigh, North Carolina has been provided by Mr. and Mrs. Worley including criminal checks and financial background information. CCDHS did an independent assessment by using the ICPC template to verify on their own the other steps and requirements taken in an ICPC. An ICPC assessment by Arizona has not been completed.
 

 9. CCDHS FCS Supervisor Rachel Willert assessed the appropriateness and feasibility for possible placement ... of [Opal] and [Jacob] with a maternal aunt and uncle, Beverly and Johnnie Worley in Phoenix, AZ. CCDHS FCS Supervisor Rachel Willert traveled to the Worley home, interviewed the family members, the Worley children, and extended relatives. CCDHS found no concerns and the Worley home was safe and appropriate.
 

 10. Beverly and Johnnie Worley are the maternal aunt and uncle of the juveniles. The juveniles have had substantial contact with Mr. and Mrs. Worley during their lifetime. Most recently, Mrs. Worley and the juveniles' cousin came to stay with mother for approximately one month. During that time, Mrs. Worley had significant interaction with the juveniles. CCDHS met with mother, the juveniles, and Mrs. Worley during this visit. It was apparent that the juveniles had a strong bond in connection with their relatives.
 

 11. Beverly Worley recently retired from a human services position after 25 years of service. Mr. Worley works with a funeral home on an as-needed basis. The Worley home currently has Mr. and Mrs. Worley along with their 18-year-old son who recently graduated from high school. The Worley's [sic] have two other children who are grown and out of the home. One is working and college [sic] and one is in the military. The Worley's [sic] comfortably live off of Mrs. Worley's retirement and Mr. Worley's income from the funeral home work.
 

 12. Mr. and Mrs. Worley are financially stable and able to provide for the financial needs of the juveniles. Mr. and Mrs. Worley have proven the ability to provide medical care to their own child .... Mr. and Mrs. Worley have family within their community as well as extended family outside of their community for support and contact. Mr. and Mrs. Worley are willing and able to provide for the support and care for the juveniles. Mr. and Mrs. Worley have investigated the potential schools and medical care for the children to attend.
 

 13. CCDHS met with or interviewed the Worley children. The youngest child was interviewed in Cabarrus County as well as in his home in Phoenix, AZ. Both CCDHS worker's [sic] found this Worley son to be engaging, respectful, and attentive.
 

 This Court has held that N.C. Gen. Stat. § 7B-906.1(j) does not require the trial court to "make any specific findings in order to make the verification."
 
 J.E.
 
 , 182 N.C. App. at 616-17,
 
 643 S.E.2d at 73
 
 . However, we have made clear that the record must show the trial court received and considered reliable evidence that the guardian or custodian had adequate resources and understood the legal significance of custody or guardianship.
 
 See, e.g.
 
 ,
 
 In re E.M.
 
 , --- N.C. App. ----, ----,
 
 790 S.E.2d 863
 
 , 872 (2016) ("[N]o evidence in the record supports the court's finding that either of the custodians understand the legal significance of the placement.");
 
 In re P.A.
 
 ,
 
 241 N.C. App. 53
 
 , 65,
 
 772 S.E.2d 240
 
 , 248 (2015) (trial court's order was not compliant with N.C. Gen. Stat. § 7B-906.1(j) because "there [wa]s no evidence at all of what [the custodian] considered to be 'adequate resources' or what her resources were, other than the fact that she had been providing a residence for [the child]").
 

 Here, although the trial court made findings regarding the adequacy of the Worleys' financial resources to provide for the needs of Jacob and Opal, the court did not receive evidence that was sufficient to support these findings. The court accepted into evidence a report created by DHS that made no mention of the Worleys' actual income or their specific financial resources. The report merely stated that DHS was "currently in the process of assessing the appropriateness and feasibility of placement for [Opal] and [Jacob] with [the] maternal aunt and uncle."
 

 The trial court also heard testimony from Fullerton regarding the Worleys' financial resources:
 

 [COUNSEL:] And have you checked [the prospective guardians'] finances?
 

 [FULLERTON:] Yes.
 

 [COUNSEL:] And what did you do to check their finances?
 

 [FULLERTON:] Well, we gave them some forms to fill out to list their finances on. And, you know, I didn't have a reason to question what they stated was retirement, you know, benefits that [the maternal aunt] is receiving every month, and then they have additional information [sic] income that is not-for her husband. He works at the funeral home and that's not always consistent [sic] job. It's kind of based on when the services are needed, so they don't count on that income. It's extra for them.
 

 [COUNSEL:] Have you done any criminal background checks?
 

 [FULLERTON:] Yes.
 

 [COUNSEL:] Have you requested an ICPC home study?
 

 [FULLERTON:] Yes, we did.
 

 [COUNSEL:] And what does that normally include? What do they do when they complete that home study?
 

 [FULLERTON:] I'm not sure.
 

 [COUNSEL:] Have you been able to do any independent verification of their finances?
 

 [FULLERTON:] I haven't had a reason to, no.
 

 [COUNSEL:] How much time have you spent with the Worleys?
 

 [FULLERTON:] Probably a limited amount. We've just had a number of telephone conversations when Miss Worley was here for about a month in the month of June. And, you know, we spent some time together in conjunction with visits to Miss Miller's home. She also participated in CFT meeting [sic], and we had some conversations after that meeting after that. We have continued to maintain phone contact with her and to discuss her interest in and feasibility of her, you know, receiving custody of the children if it didn't work out with Miss Miller and so those conversations have just-I guess increased as we've gotten a lot closer to the time.
 

 Willert also testified as follows on this issue:
 

 [COUNSEL:] How about the finances in regards to Mr. and Mrs. Worley?
 

 [WILLERT:] A financial affidavit was completed ....
 

 [COUNSEL:] Were there any concerns?
 

 [WILLERT:] No.
 

 [COUNSEL:] Was there any independent verification of the incomes and the information in the affidavit?
 

 [WILLERT:] We didn't do the checks. It was sent off with the ICPC for verification, but that would be as easy as looking generally for a home study when they have that-all it is is verifying a bank statement for deposit.
 

 While this testimony constituted evidence that the Worleys did possess
 
 some
 
 income, it did not state the amount of that income or demonstrate that it was sufficient to provide necessary care for the juveniles. Moreover, the social worker's statement that there were no concerns with the Worleys' financial affidavit is too vague to constitute adequate evidence that they did, in fact, possess adequate resources to care for the juveniles.
 

 DHS and the GAL cite
 
 J.E.
 
 in support of their argument regarding the adequacy of the evidence on this issue. In
 
 J.E.
 
 , a department of social services report was provided to the trial court stating that a home study of the custodians' house had been conducted by the department.
 
 J.E.
 
 , 182 N.C. App. at 617,
 
 643 S.E.2d at 73
 
 . We held that the home study report supported the trial court's determination that the custodians had adequate resources to care for the minor child.
 

 Id.
 

 Here, conversely, while a home study had been requested, there was no testimony as to the results of the study or whether it had even been completed.
 

 DHS and the GAL point to additional testimony stating that the Worleys (1) have three children of their own; (2) maintain "a stable home and a good home;" and (3) arranged schooling for Opal and Jacob in Arizona and made medical appointments for them. However, none of this evidence is sufficient to comply with N.C. Gen. Stat. § 7B-906.1(j). As discussed above, the trial court did not receive evidence regarding the Worleys' financial resources that was specific enough to enable the court to verify that they possessed adequate resources to provide for the needs of the juveniles.
 
 See
 

 P.A.
 
 ,
 
 241 N.C. App. at 65
 
 ,
 
 772 S.E.2d at 248
 
 (vacating and remanding permanency planning and review order where trial court failed to verify whether individual awarded guardianship had adequate resources to care for juvenile).
 

 Furthermore, in addition to the lack of sufficient evidence regarding the Worleys' resources, the trial court also heard no evidence from which it could verify that the Worleys understood the legal significance of assuming custody of Jacob and Opal. "Evidence sufficient to support a factual finding that a potential guardian understands the legal significance of guardianship can include,
 
 inter alia
 
 , testimony from the potential guardian of a desire to take guardianship of the child, the signing of a guardianship agreement acknowledging an understanding of the legal relationship, and testimony from a social worker that the potential guardian was willing to assume legal guardianship."
 
 E.M.
 
 , --- N.C. App. at ----,
 
 790 S.E.2d at 872
 
 . Neither of the Worleys testified at the 10 August 2017 hearing, and no testimony was offered by DHS that the Worleys were aware of the legal significance of assuming custody of the juveniles. Nor did the Worleys sign a guardianship agreement acknowledging their understanding of the legal relationship.
 

 Thus, for these reasons as well, we must vacate the trial court's award of custody of Jacob and Opal to the Worleys and remand for further proceedings.
 
 See
 

 id.
 

 at ----,
 
 790 S.E.2d at 872
 
 (vacating award of custody where no evidence was presented supporting court's finding that custodians understood legal significance of placement).
 

 IV. Findings Regarding Visitation
 

 Finally, Respondent contends that the trial court failed to make necessary findings concerning Respondent's visitation rights in the permanency planning review order. DHS and the GAL once again concede error on this issue, and we agree that the court's findings did not fully comply with the applicable statutory requirements.
 

 N.C. Gen. Stat. § 7B-905.1(c) provides, in pertinent part, as follows:
 

 If the juvenile is placed or continued in the custody or guardianship of a relative or other suitable person, any order providing for visitation shall specify the minimum frequency and length of the visits and whether the visits shall be supervised. ...
 

 N.C. Gen. Stat. § 7B-905.1(c) (2017).
 

 In the present case, after concluding that visitation with Respondent was in Opal and Jacob's best interests, the trial court ordered that
 

 [v]isitation between [Opal] and [Jacob] with [Respondent] be coordinated between [Respondent] and [the maternal aunt]. If [Respondent] were to return to live in Arizona, that visitation between [Respondent, Opal, and Jacob] occur weekly for a minimum of 2 hours.
 

 This portion of the court's order is deficient in several respects. First, it fails to provide any direction as to the frequency or length of Respondent's visits in the event that she does
 
 not
 
 return to live in Arizona. Second, it fails to specify whether the visits with Respondent should be supervised or unsupervised. On remand, we instruct the trial court to make new findings on this issue that comply with N.C. Gen. Stat. § 7B-905.1(c).
 
 See
 

 In re J.P.
 
 ,
 
 230 N.C. App. 523
 
 , 530,
 
 750 S.E.2d 543
 
 , 548 (2013) (remanding for new findings where trial court failed to specify conditions of visitation as required by statute).
 

 Conclusion
 

 For the reasons stated above, we vacate the trial court's 25 August 2017 order and remand for further proceedings not inconsistent with this opinion.
 

 VACATED AND REMANDED.
 

 Judges DILLON and BERGER concur.
 

 [1]
 

 Pseudonyms and initials are used throughout this opinion to protect the identities of the minor children and for ease of reading.
 

 [2]
 

 The children's father is deceased.
 

 [3]
 

 April was not a subject of the order from which appeal is being taken and, therefore, her status is not at issue in this appeal.