IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-268

No. COA20-797

Filed 15 June 2021

Hyde County, No. 18 JA 6

IN THE MATTER OF: K.P.

Appeal by Appellant-Mother from an order entered 21 July 2020 by Judge Christopher B. McLendon in Hyde County District Court. Heard in the Court of Appeals 13 April 2021.

*J. Thomas Diepenbrock for Appellant.*

*Rodman, Holscher, Peck & Edwards, P.A., by Jacinta D. Jones for Hyde County Department of Social Services.*

*Keith Karlsson for the Guardian ad Litem.*

ARROWOOD, Judge.

¶ 1       Appellant, the mother of K.P. ("Kenneth"),[1] appeals from the trial court's permanency planning order granting legal and physical custody of Kenneth to non-relative custodians. Appellant contends that the trial court erred by (1) eliminating reunification as a primary or secondary permanent plan without making required

---

[1] Pseudonyms are used throughout the opinion to protect the identity of the parties involved.

findings of fact; (2) failing to make findings of fact supported by competent evidence that each of the proposed custodians understood the legal significance of their appointment; and (3) ceasing further reviews without making proper findings. For the following reasons, we vacate and remand.

## I.     Background

Kenneth, the youngest of Appellant's four children, was born 13 December 2017. Prior to Hyde County Department of Social Services' ("DSS") involvement, Kenneth and his siblings resided with Appellant and her husband, "Mr. Phillips." Mr. Phillips is the father of Kenneth's three siblings and was initially believed to be Kenneth's father.

On 17 March 2018, when Kenneth was three months old, Appellant and Mr. Phillips were involved in a domestic violence incident wherein Mr. Phillips returned home to find Appellant in bed with her paramour ("Mr. Keller"). Mr. Phillips "lunged" at Mr. Keller, who grabbed a nearby knife. Mr. Phillips took the knife from Mr. Keller and a physical altercation ensued, resulting in Mr. Keller being hospitalized. Kenneth and his siblings were present during the incident. As a result of the altercation, Mr. Phillips was arrested and charged with assault with a deadly weapon with a minor present, assault with a deadly weapon, and assault inflicting serious injury. Appellant, who had pending charges for resisting a public officer and probation violation, was also arrested and charged with simple assault. Before her

arrest, Appellant arranged for Kenneth to be placed with a maternal aunt.

¶ 4        On 21 March 2018, DSS obtained a nonsecure custody order of Kenneth. DSS subsequently filed a petition alleging Kenneth to be a neglected and dependent juvenile on 22 March 2018. Prior to filing the petition, DSS contacted Mr. Phillips who indicated that he was unsure if he could care for the children. Following a hearing on 27 March 2018, the court issued an order continuing nonsecure custody of Kenneth with DSS. During this time, Kenneth remained in the care of his maternal aunt until 22 May 2018, when the trial court ordered that Kenneth and his siblings be placed in the home of Mr. Phillips' father and stepmother, "Mr. Phillips, Sr." and "Mrs. Phillips," respectively.

¶ 5        At a subsequent nonsecure custody hearing held on 8 August 2018, the district court found that there was an issue as to the paternity of Kenneth and ordered Mr. Phillips to take a DNA test. Notwithstanding the paternity issue, the district court maintained Kenneth's placement with Mr. Phillips, Sr., and Mrs. Phillips. Test results later determined that Mr. Phillips was not Kenneth's biological father. Appellant subsequently named Mr. Keller as a potential father. Mr. Keller was ordered to take a DNA test, which confirmed that Mr. Keller, not Mr. Phillips, was Kenneth's biological father.

¶ 6        Thereafter, Kenneth was adjudicated neglected at an adjudication and disposition hearing on 10 December 2018. Appellant was ordered to participate in

substance abuse treatment, domestic violence counseling, and anger management classes. The court also ordered her to maintain stable housing, obtain a valid driver's license and safe transportation, and attend visitation with her children.

¶ 7        Despite Mr. Phillips not being Kenneth's father, Kenneth remained placed with Mr. Phillips, Sr., and Mrs. Phillips until 17 July 2019, when he was moved to the home of his half-siblings' paternal step great-grandparents. During that time, the court held several permanency planning hearings in which it found that Appellant had completed parenting and anger management classes, admitted herself into an inpatient substance abuse treatment program, completed a substance abuse assessment, and maintained her sobriety.

¶ 8        In March 2019, Appellant resumed her romantic relationship with Mr. Phillips, and the two began residing with each other in April 2019 in a home that had "ample space for the parties' children." The couple later enrolled in family counseling. Following a permanency planning hearing on 20 August 2019, the court ordered that Kenneth begin trial home placement with Appellant and Mr. Phillips on 20 September 2019. The parties were scheduled to return to court for another permanency planning hearing on 10 December 2019. Moreover, at this point, the permanent plan for Kenneth remained the same as the court's decree following the 25 March 2019 permanency planning hearing: reunification with a concurrent plan of custody with a relative.

¶ 9        On 25 October 2019, Appellant told her social worker that Mr. Phillips had been physically and verbally abusing her for approximately one month. Appellant also informed the social worker that she had concerns about Mr. Phillips using drugs and the possibility of eviction due to Mr. Phillips' failure to pay rent. Upon further investigation, DSS determined that both Appellant and Mr. Phillips had been the perpetrators of the domestic discord at different times and that the juveniles were present during the altercations. As a result of these findings, the court held a placement review hearing on 29 October 2019 and determined that it was in Kenneth's and his siblings' best interest to terminate the trial home placement. Kenneth was removed and placed in the home of his maternal aunt following the 29 October 2019 hearing. After the termination of the trial home placement, Appellant relocated to Virginia to live with her mother, and Kenneth was returned to the home of Mr. Phillips, Sr., and Mrs. Phillips.

¶ 10       On 13 January 2020, the court held another permanency planning hearing. With regard to Appellant's circumstances, the court found that Appellant reported that she was working two jobs cleaning homes and delivering food, but she did not have a valid driver's license. The court also found that despite Appellant reporting that her monthly income was approximately $1,200.00, she had not provided DSS or the juvenile's placement with any financial assistance. Appellant also refused to submit to two hair follicle drug screens in October and December 2019.

¶ 11        Regarding Mr. Keller, the court found that he had left his inpatient substance abuse treatment program and secured his own housing. The court noted that Mr. Keller planned to find larger housing in order to gain custody of Kenneth and that Mr. Keller reported securing outside employment. The court also found that Mr. Keller had admitted to daily marijuana use to deal with stress and anger issues. Following the hearing, the court changed the primary permanent plan to custody with a relative with concurrent plans of custody to a court-approved caretaker and reunification.

¶ 12        This matter appeared for a final permanency planning hearing on 3 June 2020 in Hyde County Juvenile District Court. The trial court found that Appellant had refused another hair follicle drug test in January 2020, tested negative after submitting a hair follicle test in February 2020, and subsequently refused another drug screen in March 2020. The court also found that Appellant moved to Hertford, North Carolina to live with her sister in April 2020, continued to clean houses as a source of income, and obtained a valid driver's license in May 2020. The district court acknowledged Appellant's request that Kenneth "be returned to her immediately while she lives in Hertford."

¶ 13        On 21 July 2020, the trial court entered an order granting legal and physical custody of Kenneth to Mr. Phillips, Sr., and Mrs. Phillips (the "Order") with supervised visitation to Appellant. The district court ceased further reviews and

effectively ceased reunification efforts as there was no longer a permanent plan of reunification. The district court also released DSS, the *Guardian ad Litem* (the "GAL"), and the attorneys of record for Appellant from the matter. Lastly, the trial court determined that the primary permanent plan of custody had been achieved through the entry of the Order.

¶ 14        Appellant filed a timely notice of appeal of the Order on 18 August 2020.

## II.        Discussion

¶ 15        Appellant raises three arguments on appeal, asserting that the trial court erred by (1) eliminating reunification as a primary or secondary permanent plan without making required findings of fact; (2) failing to make findings of fact supported by competent evidence that each of the proposed custodians understood the legal significance of their appointment; and (3) ceasing further reviews without making proper findings. We address each argument in turn.

¶ 16        " 'Appellate review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and the findings support the conclusions of law.' " *In re R.A.H.*, 182 N.C. App. 52, 57-58, 641 S.E.2d 404, 408 (2007) (citation omitted) (quoting another source). "If the trial court's findings of fact are supported by any competent evidence, they are conclusive on appeal." *In re P.O.*, 207 N.C. App. 35, 41, 698 S.E.2d 525, 530 (2010) (citation omitted). We review the district court's conclusions of law *de novo*. *Id.* (citation omitted). Questions of

statutory interpretation are questions of law, which we also review *de novo*. *In re P.A.*, 241 N.C. App. 53, 58, 772 S.E.2d 240, 245 (2015) (citation omitted). Lastly, we note that the trial court's "failure to make statutorily-mandated findings constitutes reversible error." *In re D.C.*, __ N.C. App. __, __, 852 S.E.2d 694, 696 (2020) (citation omitted).

## A. Reunification

Appellant contends that the trial court erred by eliminating reunification as a primary or secondary permanent plan without first making required findings of fact, particularly that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety in accordance with N.C. Gen. Stat. § 7B-906.2(b). We agree.

Section 7B-906.2(b) of our General Statutes provides, in part, the following:

> At any permanency planning hearing, the court shall adopt concurrent permanent plans and shall identify the primary plan and secondary plan. Reunification shall be a primary or secondary plan unless the court made findings under G.S. 7B-901(c) or G.S. 7B-906.1(d)(3), the permanent plan is or has been achieved in accordance with subsection (a1) of this section, or the court makes written findings that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety.

N.C. Gen. Stat. § 7B-906.2(b) (2019). In turn, subsections 7B-906.2(d)(1)-(4) of the Juvenile Code read as follows:

> At any permanency planning hearing under subsections (b)

and (c) of this section, the court shall make written findings as to each of the following, which shall demonstrate the degree of success or failure toward reunification:

(1) Whether the parent is making adequate progress within a reasonable period of time under the plan.

(2) Whether the parent is actively participating in or cooperating with the plan, the department, and the guardian ad litem for the juvenile.

(3) Whether the parent remains available to the court, the department, and the guardian ad litem for the juvenile.

(4) Whether the parent is acting in a manner inconsistent with the health or safety of the juvenile.

N.C. Gen. Stat. § 7B-906.2(d)(1)-(4). This Court has made clear that when a district court eliminates reunification as either a primary or secondary permanent plan, it must make findings pursuant to both N.C. Gen. Stat. §§ 7B-906.2(b) and (d). *See generally Matter of K.L.*, 254 N.C. App. 269, 280, 802 S.E.2d 588, 595 (2017). These requirements are coupled with the obligation codified in N.C. Gen. Stat. § 7B-906.1(d)(3), which states, in pertinent part, that, "At each hearing, the court shall consider the following criteria and make written findings regarding those that are relevant . . . [including] [w]hether efforts to reunite the juvenile with either parent clearly would be unsuccessful or inconsistent with the juvenile's health or safety and need for a safe, permanent home within a reasonable period of time." N.C. Gen. Stat. § 7B-906.1(d)(3) (2019).

¶ 19        Here, following the 3 June 2020 permanency planning hearing, the court determined that it was in Kenneth's best interest to be placed in the custody of Mr. Phillips, Sr., and Mrs. Phillips and that awarding custody of Kenneth to the couple would achieve the primary permanent plan of custody to a relative. However, in the 3 April 2020 permanency planning order, the district court ordered a primary permanent plan of custody to a relative with concurrent permanent plans of custody to a court-approved caretaker and also required reunification. To subsequently remove reunification as a concurrent permanent plan requires properly admitted evidence to support findings of fact to allow the court to conclude "efforts to reunite the juvenile with either parent clearly would be unsuccessful or inconsistent with the juvenile's health or safety and need for a safe, permanent home within a reasonable period of time." *See* N.C. Gen. Stat. § 7B-906.1(d)(3); *see also Matter of K.L.*, 254 N.C. App. at 275, 802 S.E.2d at 592. In addition, because the trial court implicitly ceased reunification efforts and omitted reunification from the permanent plan, it was required to satisfy N.C. Gen. Stat. § 7B-906.2(b). *Matter of D.C.*, __ N.C. App. at __, 852 S.E.2d at 697. Thus, without making proper findings of fact based on competent evidence pursuant to the aforesaid statutory provisions, the trial court erred by effectively ceasing reunification efforts in the Order.

¶ 20        DSS and the GAL argue, however, that reunification need not have been a primary or secondary plan because the permanent plan had been achieved. The

3 April 2020 order states that "[t]he primary permanent plan for the juvenile shall be custody to a ***relative*** with concurrent permanent plans of custody to a court-approved caretaker and reunification." (emphasis added) Following the 3 June 2020 final permanency planning hearing, the district court concluded that the "primary permanent plan for the juvenile . . . ha[d] been achieved through the entry of th[e] [O]rder." The trial court's findings of fact do not support this conclusion; in fact, the district court's findings directly refute it. The "primary permanent plan" for Kenneth was custody with a "***relative***." As noted above, after the 3 June 2020 hearing, the trial court awarded legal and physical custody to ***non-relatives*** Mr. Phillips, Sr., and Mrs. Phillips.[2] Thus it is implausible to conclude that the primary permanent plan had been achieved as the juvenile was placed in the custody of persons without any biological connection to Kenneth.

Moreover, the 3 April 2020 order suffers the same defect as the Order—it fails to address the ultimate question of whether reunification would be unsuccessful or inconsistent with Kenneth's safety. Because the trial court ceased reunification efforts without making sufficient findings pertinent to N.C. Gen. Stat. § 7B-906.2(d) and the ultimate findings required by N.C. Gen. Stat. §§ 7B-906.2(b) and 7B-906.1(d)(3), and because the trial court erroneously concluded that the primary

---

[2] Because Mr. Phillips is not Kenneth's biological father, neither Mrs. Phillips nor Mr. Phillips, Sr., are "relatives."

permanent plan had been achieved through entry of the Order, we vacate and remand for further proceedings. *See Matter of D.A.*, 258 N.C. App. 247, 254, 811 S.E.2d 729, 734 (2018) (vacating order ceasing reunification efforts due to trial court's failure to include findings embracing the requisite ultimate question of whether reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety); *cf. In re C.M.*, 183 N.C. App. 207, 213, 644 S.E.2d 588, 594 (2007) ("This Court reviews an order that ceases reunification efforts to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition.").

## B.    Verification

Next, Appellant asserts that the trial court erred when it failed to make findings of fact supported by competent evidence that each of the proposed custodians (Mr. Phillips, Sr., and Mrs. Phillips) understood the legal significance of Kenneth's placement in their care. We agree and conclude that the trial court failed to fulfill its statutory obligation to verify that Mr. Phillips, Sr., and Mrs. Phillips (non-parents and non-relatives) understood the legal significance of their appointment as Kenneth's custodians. Section 7B-906.1(j) of our Juvenile Code states the following:

> If the court determines that the juvenile shall be placed in
> the custody of an individual other than a parent or appoints
> an individual guardian of the person pursuant to G.S. 7B-

> 600, the court shall verify that the person receiving custody
> or being appointed as guardian of the juvenile understands
> the legal significance of the placement or appointment and
> will have adequate resources to care appropriately for the
> juvenile.

N.C. Gen. Stat. § 7B-906.1(j). DSS and the GAL argue that this verification requirement was met in light of testimony from a DSS social worker and Mr. Phillips, Sr. We disagree.

¶ 23      This Court has explained "that N.C. Gen. Stat. § 7B-906.1(j) does not require the trial court to 'make any specific findings in order to make the verification.'" *Matter of J.D.M.-J.*, 260 N.C. App. 56, 65, 817 S.E.2d 755, 761 (2018) (citation omitted) (quoting another source). "However, we have made clear that the record must show the trial court received and considered reliable evidence that the guardian or custodian had adequate resources and understood the legal significance of custody or guardianship." *Id.* (citations omitted). In the *Matter of J.D.M.-J.*, this Court vacated the award of custody because neither of the custodians testified at the permanency planning hearing and because no evidence was offered by DSS confirming that the custodians understood the legal significance of assuming custody of the juveniles. *Id.* at 260 N.C. App. at 68, 817 S.E.2d at 757. Here, Mrs. Phillips did not testify at the final permanency planning hearing, and testimony elicited from Mr. Phillips, Sr., did not demonstrate that he understood the legal significance of Kenneth's placement nor that the couple had the adequate resources to care

appropriately for the juvenile. During the 3 June 2020 permanency planning hearing, a DSS social worker testified as follows:

> Q: And have [Mr. Phillips, Sr., and Mrs. Phillips] expressed a desire to accept legal custody of [Kenneth]?
>
> A: Yes, they have.

Mr. Phillips, Sr., in turn, testified to the following:

> Q: And do you recall having conversations with the Department regarding taking custody of [Kenneth]?
>
> A: Yes, ma'am.
>
> Q: And are you and your wife willing to do that at this time?
>
> A: Yes, ma'am.
>
> Q: And are you and your wife willing to provide permanence for [Kenneth] through a custody order?
>
> A: Yes, ma'am

As demonstrated above, Mr. Phillips, Sr., simply stated that he was willing to take custody of Kenneth. This testimony, even when coupled with the social worker's testimony that Mr. Phillips, Sr., and Mrs. Phillips "expressed a desire to accept legal custody" of Kenneth is insufficient to satisfy N.C. Gen. Stat. § 7B-906.1(j).

¶ 24    In short, neither the record at a whole nor the district court's findings of fact support the conclusion that Kenneth's custodians understood the legal significance of the placement or that they would have the adequate resources to care appropriately

for the juvenile. Indeed, the Order is devoid of any mention of the matter. For these reasons, we vacate and remand for further evidentiary findings pursuant to N.C. Gen. Stat. § 7B-906.1(j). *See In re L.M.*, 238 N.C. App. 345, 348, 767 S.E.2d 430, 433 (2014) (concluding that evidence did not support a finding that the other potential guardian understood the legal significance of guardianship where she did not testify, sign a guardianship agreement, or otherwise demonstrate that she had accepted responsibility for the child); *see also Matter of E.M.*, 249 N.C. App. 44, 55, 790 S.E.2d 863, 872 (2016) (vacating award of legal custody and remanding where record was devoid of evidence indicating that custodian couple understood the legal significance of the juvenile's placement: "Here, the husband in the custodial couple did not testify, and there is no evidence to indicate that he understood the legal significance of taking custody of [juvenile]. Further, although his wife testified at the hearing, she never testified regarding her understanding of the legal relationship, and the court never examined her to determine whether she understands the legal significance of the relationship.").

## C. Cessation of Further Review Hearings

Appellant's final challenge is that because the Order provided that "[t]here shall be no further reviews of this matter[,]" the district court was statutorily obliged to make the required relevant findings of fact pursuant to N.C. Gen. Stat. § 7B-906.1(n). Because the district court failed to do so, Appellant assigns error to this

portion of the Order, as well. DSS and the GAL concede this error on appeal.

¶ 26        "Review hearings after the initial permanency planning hearing shall be designated as permanency planning hearings." N.C. Gen. Stat. § 7B-906.1(a). Generally, "[p]ermanency planning hearings shall be held at least every six months thereafter or earlier as set by the court to review the progress made in finalizing the permanent plan for the juvenile, or if necessary, to make a new permanent plan for the juvenile." *Id.* In addition, N.C. Gen. Stat. § 7B-906.1(n) reads as follows:

> Notwithstanding other provisions of this Article, the court may waive the holding of hearings required by this section, may require written reports to the court by the agency or person holding custody in lieu of review hearings, or order that review hearings be held less often than every six months if the court finds by clear, cogent, and convincing evidence each of the following:
>
> (1) The juvenile has resided in the placement for a period of at least one year or the juvenile has resided in the placement for at least six consecutive months and the court enters a consent order pursuant to G.S. 7B-801(b1).
>
> (2) The placement is stable and continuation of the placement is in the juvenile's best interests.
>
> (3) Neither the juvenile's best interests nor the rights of any party require that review hearings be held every six months.
>
> (4) All parties are aware that the matter may be brought before the court for review at any time by the filing of a motion for review or on the court's own motion.

> (5) The court order has designated the relative or other suitable person as the juvenile's permanent custodian or guardian of the person.

N.C. Gen. Stat. § 7B-906.1(n).

"Our statutes and cases require the trial court to address all five criteria, make findings of fact to support its conclusion, and hold its failure to do so is reversible error." *Matter of K.L.*, 254 N.C. App. at 284, 802 S.E.2d at 598 (citations omitted). DSS and the GAL concede that the trial court failed to comply with the mandatory provisions of this statute. This uncontested error provides an additional, disjunctive reason to vacate the Order.

### III.    Conclusion

For the foregoing reasons, we vacate the district court's 21 July 2020 permanency planning order and remand for further findings consistent with this opinion.

VACATED AND REMANDED.

> Chief Judge STROUD concurs
>
> Judge JACKSON concurs in part and dissents in part.

JACKSON, Judge, concurring in part and dissenting in part.

I join the portion of the majority's opinion holding that the trial court's order failed to comply with the mandatory making of findings of fact pursuant to N.C. Gen. Stat. § 7B-906.1(n) before concluding that there should be no further reviews of the matter, as DSS and the GAL concede. However, I respectfully dissent from the portions of the majority opinion concerning reunification and verification.

The majority opinion does a good job of listing out the relevant facts contained in the record with one exception: that Kenneth was thriving in his current placement and received appropriate care and supervision, and that Mr. Phillips Sr. and Mrs. Phillips had demonstrated a commitment to serving as a permanent placement for the child.

## I. Analysis

Generally, "[t]his Court reviews an order that ceases reunification efforts to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition." *In re C.M.*, 183 N.C. App. 207, 213, 644 S.E.2d 588, 594 (2007). "An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision." *In re N.G.*, 186 N.C. App. 1, 10-11,

650 S.E.2d 45, 51 (2007) (internal marks and citations omitted), *aff'd per curiam*, 362 N.C. 229, 657 S.E.2d 355 (2008). "The trial court's conclusions of law are reviewed *de novo* on appeal." *In re K.L.*, 254 N.C. App. 269, 272-73, 802 S.E.2d 588, 591 (2017). "The failure to make statutorily-mandated findings constitutes reversible error." *In re D.C.*, 852 S.E.2d 694, 696 (N.C. Ct. App. 2020).

## A. Cessation of Reunification

¶ 32    Respondent contends that the trial court was required to make written findings that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety in accordance with N.C. Gen. Stat. § 7B-906.2(b). The majority agrees and additionally finds that the trial court failed to include findings that correspond with the requirements of N.C. Gen. Stat. § 7B-906.2(d). DSS and the GAL, on the other hand, argue that the court was not required to make findings pursuant to § 7B-906.2(b), because the court found that the primary permanent plan was achieved by entry of the 3 June 2020 order. I agree with DSS and the GAL that the trial court's order fully complied with § 7B-906.2(b) and further agree with Respondent that the order includes sufficient findings that correspond to the requirements of § 7B-906.2(d).

¶ 33    Section 7B-906.2(b) of the North Carolina General Statutes provides that

> [r]eunification shall be a primary or secondary plan unless
> the court made findings under G.S. 7B-901(c) or G.S. 7B-

> 906.1(d)(3), the permanent plan is or has been achieved in accordance with subsection (a1) of this section, <u>or</u> the court makes written findings that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety.

N.C. Gen. Stat. § 7B-906.2(b) (2019) (emphasis added).

This Court has recognized that "or" signifies an option in the statute. *See In re D.C.*, 852 S.E.2d at 697. Thus, reunification shall be a primary or secondary plan unless one of three circumstances exist: (1) the court made findings under N.C. Gen. Stat. §§ 7B-901(c) or 7B-906.1(d)(3); (2) the permanent plan is or has been achieved; or (3) the court makes written findings that reunification efforts clearly would be unsuccessful. N.C. Gen. Stat. § 7B-906.2(b) (2019).

Circumstance two, as outlined in the statute, is relevant here and provides that the court may cease reunification efforts if "the permanent plan is or has been achieved in accordance with subsection (a1) of this section[.]" N.C. Gen. Stat. § 7B-906.2(b) (2019). To that end, subsection (a1) provides that "[c]oncurrent planning shall continue until a permanent plan is or has been achieved." *Id.* § 7B-906.2(a1). In interpreting this portion of the statute, our Court has previously held, in an unpublished opinion, that "under § 7B-906.2(a1), reunification efforts may be ceased simply upon completion of one of the juvenile's permanent plans—and consequently, that completion of a permanent plan means that no specific factual findings are

required under § 7B-906.2(b)." *In re E.Y.B. & G.*, 2021-NCCOA-64, 2021 N.C. App. LEXIS 209, at *55 (2021).

¶ 36    Here, after the first permanency planning hearing on 25 March 2019, Kenneth was assigned a primary permanent plan of reunification, with a concurrent plan of custody with a relative. In a subsequent permanency planning hearing on 20 August 2019, the permanent plan remained the same. Following the 13 January 2020 permanency planning hearing, however, Kenneth was assigned a primary permanent plan of custody to a relative, with a concurrent permanent plan of custody to a court-approved caretaker and reunification. Finally, during the 3 June 2020 permanency planning hearing, the court determined that it was in Kenneth's best interest to be placed in the custody of Mr. Phillips Sr. and Mrs. Phillips, and that awarding custody of Kenneth to the couple would achieve the primary plan of custody to a court-approved caretaker.[3]

---

[3] The majority contends that it was implausible to grant non-relative custody of Kenneth when the court had previously determined in a prior permanency planning hearing that the primary plan for Kenneth was custody to a relative. However, the majority overlooks failed attempts by the court to place Kenneth with his parents and relatives. Specifically, the court arranged for a home placement with Respondent, which lasted for approximately two months. Thereafter, the court removed Kenneth due to abuse in Respondent's household and placed him with his maternal aunt. Kenneth remained with his aunt for approximately one month before the court ordered that Kenneth be placed with Mr. Phillips Sr. and Mrs. Phillips. Kenneth's biological father also expressed his consent to Kenneth being placed in the legal and physical custody of the Phillips and believes their home is appropriate. Thus, given the history of this case, and the discretion given to courts to adopt a permanent plan

¶ 37      In making its decision, the trial court considered a number of factors, including "[w]hether efforts to reunite the juvenile with either parent would be unsuccessful or inconsistent with the juvenile's health or safety and need for a safe, permanent home within a reasonable time." N.C. Gen. Stat. § 7B-906.1(d)(3) (2019). Specifically, the trial court found:

> a. The juvenile is currently placed in the home of paternal step-grandfather and step-grandmother[.] . . . He has been in the [Phillips Sr.] home since November 1, 2019, but was also previously placed in their home prior to Respondent-Mother beginning a trial home placement in August 2019. The juvenile is receiving appropriate care in his current placement and is in the least restrictive, most family-like setting available to him.
>
> b. The present risk of harm to the juvenile if returned [to] either of the [R]espondent parents' homes is high. Respondent-[F]ather continues to struggle with substance abuse issues despite obtaining stable housing and employment. Respondent-Mother continues to have instability of housing and employment. She has not been compliant with all requests for random drug screens. It is not possible for the juvenile to be returned to the home of either parent immediately, not is it possible that the juvenile could be returned to the home of either parent within the next six (6) months.
>
> c. While these placement [sic] was determined based upon the needs of the juvenile and factors concerning the juvenile's health and welfare, the circumstances are such that they should continue as previously established until a

---

in the juvenile's best interest, it was not implausible for the court to change the permanent plan from custody with a relative to custody by an approved caretaker.

permanent plan is achieved.

¶ 38 Thus, by awarding custody of Kenneth to court-approved caretakers, Mr. Phillips Sr. and Mrs. Phillips, and achieving Kenneth's permanent plan in accordance with § 7B-906.2(a1), the trial court was not required to also find that reunification efforts clearly would be unsuccessful or would be inconsistent with Kenneth's health or safety pursuant to § 7B-906.2(b).[4] Accordingly, the trial court's order satisfied § 7B-906.2(b) and no additional findings were required.

¶ 39 By eliminating reunification as the primary or secondary permanent plan, the court was required to also make findings pursuant to of N.C. Gen. Stat. § 7B-906.2(d). *In re K.L.*, 254 N.C. App. 269, 280-282, 802 S.E.2d 588, 595-596 (2017). N.C. Gen. Stat. § 7B-906.2(d) provides:

> At any permanency planning hearing under subsections (b) and (c) of this section, the court shall make written findings as to each of the following, which shall demonstrate the degree of success or failure toward reunification:
>
> (1) Whether the parent is making adequate progress within a reasonable period of time under the plan.
>
> (2) Whether the parent is actively participating in or cooperating with the plan, the department, and the guardian ad litem for the juvenile.

---

[4] Although the court was not required to make findings that efforts to reunite Kenneth with his parents would be unsuccessful or inconsistent with Kenneth's health or safety pursuant to § 7B-906.2(b), the court did, in fact, address this factor—satisfying § 906.1(d)(3), contrary to the majority's conclusion.

> (3) Whether the parent remains available to the court, the department, and the guardian ad litem for the juvenile.
>
> (4) Whether the parent is acting in a manner inconsistent with the health or safety of the juvenile.

N.C. Gen. Stat. § 7B-906.2(d) (2019).

¶ 40    While Respondent concedes that the order includes findings that correspond to § 7B-906.2(d), the majority found that said findings were omitted from the order. The trial court did, however, make sufficient findings pertinent to § 7B-906.2(d). Below, the language from the statute is compared side-by-side with the corresponding findings of fact from the trial court's order (in italics):

| | |
|---|---|
| (1) Whether the parent is making adequate progress within a reasonable period of time under the plan. | *Respondent-Father continues to struggle with substance abuse issues despite obtaining stable housing and employment. Respondent-Mother continues to have instability of housing and employment. She had not been compliant with all requests for random drug screens . . . Neither parent has made sufficient progress in a reasonable period of time such that the juvenile can be returned to them immediately or within the next six (6) months.* |
| (2) Whether the parent is actively participating in or cooperating with the plan, the department, and the guardian ad litem for the juvenile. | *The respondent parents have attended services but they have been unable to demonstrate changes such that they can immediately care for the juvenile,* |

| (3) Whether the parent remains available to the court, the department, and the guardian ad litem for the juvenile. | *The parents are generally available to the Court, DSS, or the GAL to work their case plan* |
|---|---|
| (4) Whether the parent is acting in a manner inconsistent with the health or safety of the juvenile. | *The respondent parents have acted inconsistent with the juveniles' health and safety.*[5] |

¶ 41    I believe this chart demonstrates that the trial court's order contained all the key factors from § 7B-906.2(d), even though the majority holds otherwise. Accordingly, the trial court's order also satisfied § 7B-906.2(d). Thus, I would affirm the trial court's order on the issue of reunification.

## B. Verifying Legal Significance and Adequate Resources

¶ 42    Next, Respondent asserts that because the trial court placed Kenneth in the custody of Mr. Phillips Sr. and Mrs. Phillips, non-parents, the court was required to verify that the couple understood the legal significance of the placement. The majority agrees and concludes the trial court failed to do this properly, adding that the trial court also failed to verify that the guardians had adequate resources to care for Kenneth. This argument, however, is unavailing because testimony from the

---

[5] In support of this finding, the trial court detailed the progress and shortcomings of each parent in the order.

social worker and Mr. Phillips Sr. demonstrates that the couple understood the legal significance of the appointment, and Kenneth's stable placement with Mr. Phillips Sr. and Mrs. Phillips for seven consecutive months demonstrates the couple had adequate resources to care for Kenneth.

¶ 43     Section 7B-906.1(j) provides:

> [i]f the court determines that the juvenile shall be placed in the custody of an individual other than a parent or appoints an individual guardian of the person pursuant to G.S. 7B-600, the court shall verify that the person receiving custody or being appointed as guardian of the juvenile understands the legal significance of the placement or appointment and will have adequate resources to care appropriately for the juvenile. *The fact that the prospective custodian or guardian has provided a stable placement for the juvenile for at least six consecutive months is evidence that the person has adequate resources.*

N.C. Gen. Stat. § 7B-906.1(j) (2019) (emphasis added).

¶ 44     Our Court has explained

> that N.C. Gen. Stat. § 7B-906.1(j) does not require the trial court to make any specific findings in order to make the verification. However, we have made clear that the record must show the trial court received and considered reliable evidence that the guardian or custodian had adequate resources and understood the legal significance of custody or guardianship.

*In re J.D.M.-J.*, 260 N.C. App. 56, 65, 817 S.E.2d 755, 761 (2018) (internal marks and citation omitted).

Evidence sufficient to support a factual finding that a

> potential guardian understands the legal significance of guardianship can include, *inter alia*, testimony from the potential guardian of a desire to take guardianship of the child, the signing of a guardianship agreement acknowledging an understanding of the legal relationship, and testimony from a social worker that the potential guardian was willing to assume legal guardianship.

*Id.* at 68, 817 S.E.2d at 763.

Here, during the 3 June 2020 permanency planning hearing, the social worker testified as follows:

> Q: And have [Mr. Phillips Sr. and Mrs. Phillips] expressed a desire to accept legal custody of [Kenneth]?
>
> A: Yes, they have.

Mr. Phillips Sr. also testified as follows:

> Q: And do you recall having conversations with the Department regarding taking custody of [Kenneth]?
>
> A: Yes, ma'am.
>
> Q: And are you and your wife willing to do that at this time?
>
> A: Yes, ma'am.
>
> Q: And are you and your wife willing to provide permanence for [Kenneth] through a custody order?
>
> A: Yes, ma'am

The testimony of Mr. Phillips Sr., coupled with the testimony from the social worker, demonstrate that Mr. Phillips Sr. and Mrs. Phillip understood the legal

significance of the appointment—as both the social worker and Mr. Phillips Sr. testified as to the couple's understanding of the appointment. Mrs. Phillips was not required to testify—indeed, Mr. Phillips Sr. was not required to testify either, as a social worker's testimony regarding a caretaker's understanding, alone, is sufficient evidence to support a factual finding that a potential guardian understands the legal significance of the appointment. *See In re J.D.M.-J.*, 260 N.C. App. at 68, 817 S.E.2d at 763 (emphasizing that testimony from a social worker that the potential guardian was willing to assume legal guardianship is sufficient evidence to support a factual finding that a potential guardian understands the legal significance of the guardianship)*; See also* N.C. Gen. Stat. § 7B-906.1(c) (2019) ("The court may consider any evidence, including hearsay evidence . . . that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition.").

¶ 48      Because the court was not required to make specific findings regarding the couple's understanding, and the record contained testimony from the social worker and Mr. Phillips Sr. acknowledging the couple's understanding of the legal significance of custody, I believe the court properly verified that Mr. Phillips Sr. and Mrs. Phillips understood the legal significance of their appointment in compliance with N.C. Gen. Stat. § 7B-906.1(j).

*JACKSON, J., concurring in part and dissenting in part.*

¶ 49        The majority also finds that the trial court failed to determine if Mr. Phillips Sr. and Mrs. Phillips possessed adequate resources to care appropriately for the juvenile.  In making this determination, the majority omits the last sentence of N.C. Gen. Stat. § 7B-906.1(j), which provides that "[t]he fact that the prospective custodian or guardian has provided a stable placement for the juvenile for at least six consecutive months is evidence that the person has adequate resources."  N.C. Gen. Stat. § 7B-906.1(j) (2019).

¶ 50        Here, prior to the 3 June 2020 permanency planning hearing, Kenneth had resided with Mr. Phillips Sr. and Mrs. Phillips for seven consecutive months (beginning 1 November 2019), after the court had terminated Respondent's trial home placement.  During Kenneth's time with the Phillips, the court found that Kenneth was "receiving appropriate care in his current placement and [wa]s in the least restrictive, most family-like setting available to him."  Moreover, during the permanency planning hearing, Mr. Phillips Sr. provided the following testimony regarding his finances:

> Q:  And if I may ask, Mr. Phelps, what is an estimate of your annual salary?
>
> A:  It depends year to year.  I think last year was fifty-six, I think, something like that.
>
> Q:  And since having [Kenneth] in your home, have you and your wife experienced any difficulty in financially caring

for him?

A: No.

Q: Do you anticipate having any financial difficulty in continued care of [Kenneth]?

A: No; no, ma'am.

Q: And have you been caring for [Kenneth] without any substantial financial contributions from the parents?

A: No.

Q: No contributions?

A: No.

Again, the trial court was not required to make specific findings regarding the Phillips' ability to provide adequate resources. Indeed, the record demonstrated that Kenneth retained a stable placement with the Phillips for at least six consecutive months—establishing that the couple possessed adequate resources to care for Kenneth—and Mr. Phillips Sr. was gainfully employed with resources to support Kenneth, without any help from Respondent or Kenneth's biological father. *See* N.C. Gen. Stat. § 7B-906.1(j) (2019). Thus, I would affirm the trial court's order on this issue of verification.

## II. Conclusion

Altogether, the trial court did not err in eliminating reunification as a primary or secondary permanent plan, because the order contained all the statutorily required

*In re K.P.*

2021-NCCOA-268

*JACKSON, J., concurring in part and dissenting in part.*

findings of fact. Moreover, the court did not err in placing Kenneth with Mr. Phillips Sr. and Mrs. Phillips because testimony in the record revealed that the couple understood the legal significance of their appointment and possessed adequate resources to care for Kenneth. Because the majority has concluded otherwise on both issues, I respectfully dissent as to the Court's holdings on reunification and verification.